IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MICHAEL MCKENZIE, individually and doing business as AMERICAN IMAGE ART, an unincorporated dba,<br><br>    Plaintiff,<br><br>    v.<br><br>JAMES W. BRANNAN, as personal representative of THE ESTATE OF ROBERT INDIANA, and AARON M. FREY, only in his official capacity as Attorney General of the State of Maine,<br><br>    Defendants. | CIVIL NO. 20-cv- |

**VERIFIED COMPLAINT SEEKING BOTH DECLARATORY RELIEF AND SPECIFIC ENFORCEMENT RELATING TO A BINDING MEDIATION AGREEMENT**

Plaintiff Michael McKenzie, individually and doing business as American Image Art (hereinafter sometimes collectively referred to as "American Image"), alleges as follows for his Complaint against Defendant James W. Brannan, as personal representative of the Estate of Robert Indiana (the "Indiana Estate"), and also hereby joins Aaron M. Frey as a defendant, only in his official capacity as Attorney General of the State of Maine ("Frey"):

**Introduction**

1.    Robert Indiana, a Maine artist, lived until his death in 2018 in Vinalhaven, Maine. His artwork over decades created assets valued at more than $89,000,000, all of which he willed to Star of Hope, a Maine-based charity having a stated mission to use those assets for the economic and cultural benefit of the Vinalhaven, Maine community.

2.    After Indiana's death a dispute arose between the Indiana Estate and American Image (McKenzie) in relation to certain contract production rights and other issues involving

1

some of Indiana's artwork. This dispute was initially made part of a very costly litigation commenced in New York federal court in May 2018, and then referred to arbitration in New York. Thereafter, because of the extremely high litigation costs which were being incurred by the Indiana Estate (over $3,750,000 as of January 6, 2020) and because of the anticipated future such costs to be paid by money that would otherwise be transferred from the Estate to the Star of Hope charity, Attorney General Frey, whose office has supervisory authority over all Maine-based charities, including the Star of Hope, directed the Indiana Estate and American Image to submit their disputes to binding mediation in Maine to save such costs.

       3.      They did so and their disputes were resolved by a "Binding Term Sheet" after a mediation held in Portland, Maine on November 25 and 26, 2019. Among other provisions of the Binding Term Sheet, one provision specifically obligated the parties to discontinue the New York arbitration since all their disputes had been resolved by the mediation.

       4.      However, the Indiana Estate now refuses to honor its commitments made under the Binding Term Sheet and seeks instead to continue litigating the disputes resolved by that Binding Term Sheet in the New York arbitration. This would deprive American Image of the rights obtained by the Binding Term Sheet, cost it and the Indiana Estate many millions of dollars in legal fees, and would adversely affect the public interest by causing the loss of a substantial sum of money to the Star of Hope charity, to which the money would go if not spent on legal fees.

       5.      This action therefore seeks a declaration by this Court that the Binding Term Sheet is a specifically enforceable contract. This action also seeks a preliminary and permanent injunction ordering the Indiana Estate to join with American Image in discontinuing the New

York Arbitration and instead converting the Binding Term Sheet into a formal agreement, a conversion the Indiana Estate specifically agreed to in the Binding Term Sheet.

## The Parties

6. Plaintiff, Michael McKenzie, is a citizen of the state of New York residing in Katonah, New York.

7. Defendant James W. Brannan is the personal representative of the Indiana Estate and is a citizen of the state of Maine, residing in or around Rockland Maine.

8. The Star of Hope, Inc. (the "Star of Hope"), a non-party to be given notice of this action, is a Maine nonprofit corporation organized under the Maine Nonprofit Corporation Act (13-B M.R.S.A., §§ 101 *et seq.*) and having its principal place of business in Vinalhaven, Maine.

9. Defendant Aaron M. Frey ("Frey"), the Maine Attorney General, is a citizen of Maine residing in or around Augusta, Maine. He is joined as a defendant as is required under Maine Revised Statutes, Title 5, §194(4) which provides that the Attorney General must be made a party to all proceedings in which the Attorney General is interested in the performance of the Attorney General's duties under subsection §194(2), meaning where (i) the proceeding involves funds given or appropriated to public charities (such as the Star of Hope) within the State of Maine or (ii) there is a need to prevent breaches of trust in the administration of public charities.

## Jurisdiction and Venue

10. This Court has diversity of citizenship jurisdiction under 28 U.S.C. §1332 because the Plaintiff, McKenzie, dba American Image, is a citizen of a different state from the Indiana Estate and Frey and the amount in controversy exceeds $75,000 exclusive of interest and costs

11. Venue is proper in this District under 28 U.S.C. §1391 because both the Defendants reside within this District and a substantial part of the events or omissions giving rise

to the claim made herein occurred, and a substantial part of property that is the subject of the action is situated within this district.

### The Artwork and Legacy of Robert Indiana

12. Robert Indiana, was an exhibiting artist who came from the mid-west, moved for a time to New York and then, in 1976, moved to Vinalhaven, Maine where he lived in isolation while still creating his art until his death on August 9, 2018. He was part of the American "pop art" movement of the 1960s. While he created many notable and acclaimed works of art, his most famous was his LOVE creation, depicted here:



13.     This piece of artwork was first displayed on a Museum of Modern Art Christmas card in 1965.  In 1970, it became the sculpture depicted above, and was made more famous after being used on a United States postal stamp distributed in 1973.

14.     Plaintiff Michael McKenzie, a longtime Indiana publisher and collaborator, created the iconic HOPE artwork and approached Indiana to collaborate by making color variations of that art, which Indiana did, ultimately resulting in the Agreement for Art Editions in 2008, exemplified below:



15.     Both LOVE and HOPE have become world renown works of art. With these as the centerpiece of his work, Indiana's artwork, sculpture, prints, and silkscreens have continued until his death in 2018. His artwork has been featured in numerous exhibitions around the world,

and is found in the permanent collections of important museums such as the Museum of Modern Art and the Whitney Museum of American Art in New York, the National Gallery of Art, the Hirshhorn Museum and Sculpture Garden, and the Smithsonian Museum of American Art in Washington, D.C., the Albright-Knox Art Gallery in Buffalo, New York, the San Francisco Museum of Modern Art, and the Menil Collection in Houston, among others.

16. Because of the commercial success of his artwork, Indiana amassed a fortune. The Knox County Maine probate court records relating to his estate, filed as *Estate of Robert Indiana aka Robert Earle Clark* (Knox No. 2018-014), shows the filing of an Interim Probate Account for the period of May 25, 2018 through October, 2019 stating assets having a net value of $89,738,458.38. (*See*, **Exhibit "A"** hereto.)

17. In his will, Indiana, who died without known heirs, bequeathed his entire estate, less debts and claims, to Star of Hope, the Maine licensed charity named herein. The Star of Hope is based in Vinalhaven, Maine and operates from the Star of Hope Lodge, an old and elegant structure which is now under renovation and which is to become the centerpiece of the charity's mission, namely, to promote education of the visual arts through various means including Vinalhaven-based exhibitions, and a museum, artist-in-residence programs, and other outreach endeavors. All of these activities will have a very significant and positive effect on the Vinalhaven community, both commercially and culturally, given the world-wide popularity and respect for the Robert Indiana artwork and its ability to attract people to Vinalhaven from all over the world.

## Disputes Involving Indiana's Artwork

18. McKenzie is a long-time art publisher and collaborator operating now though American Image, his dba. In the mid-1970's, McKenzie started collaborating with Robert

Indiana. After successfully working together for years, American Image and Indiana entered into a publishing agreement in 2008, known as the Agreement For Art Editions contract, the purpose of which was to allow American Image to produce HOPE sculptures, paintings, objects and prints. (*See*, **Exhibit "B"** hereto.) The contract led to such commercial success that it generated millions of dollars in art proceeds for Indiana and was therefore renewed four times. (*See*, Ex. B where these renewals are attached) Indiana and American Image operated under this contract until Indiana's death in August of 2018. The rights and obligations of Indiana under the Agreement For Art Editions contract now belong to the Indiana Estate.

19. A company known as Morgan Art Foundation Limited ("Morgan"), an offshore Bahamian entity, claims to have contract rights to publish and promote certain Robert Indiana artwork and claims that these rights were breached by McKenzie and the Indiana Estate.

20. As a result, in 2018, Morgan filed a complaint for damages against Indiana (later naming his Estate after he died), and McKenzie, dba American Image in the United States District Court for the Southern District of New York. The action is entitled *Morgan Art Foundation Limited v. Michael McKenzie, American Image Art, and James W. Brannan As Personal Representative of The Estate of Robert Indiana, at al.*, 2018-cv-04438 (S.D.N.Y.) and is hereinafter referred to as the "New York Litigation."

21. The Indiana Estate and American Image/McKenzie thereafter filed cross claims against each other in that New York Litigation alleging various claims arising from the Agreement for Art Editions. However, that Agreement (Exhibit B) provides that, as between American Image and Indiana, "[a]ny disputes will be settled by arbitration through the American Arbitration Association." As a result, the Honorable Alicia Torres (presiding over the New York Litigation), ordered, on October 9, 2019, that the claims between the Estate and American

Image/McKenzie be arbitrated under the auspices of The New York Office of the American Arbitration Association. (*See*, Order Compelling Arbitration, **Exhibit "C"** hereto.)

22. The New York Litigation, including the arbitration between The Indiana Estate and American Image, has become wildly expensive. While only one deposition in the civil action has been taken and the pleadings are not yet fully settled, the docket entries already number 326. Moreover, the separate arbitration between the Estate and McKenzie promises to be equally if not more costly. It involves three arbitrators with a combined, anticipated arbitrator fee of hundreds of thousands of dollars for two weeks of arbitration with an anticipated, potential one to three more weeks of length, possible. The schedule set for this arbitration (*see*, **Exhibit "D"** hereto) defies the notion that arbitration seeks to streamline and make dispute resolution less costly. That schedule is sixteen pages in length and provides elaborate procedures for document production, depositions, expert disclosures, and pretrial filings to rival those imposed in the most complex of civil trials. It specifies that, after all this work is done, stretching for the next 8 months, an evidentiary hearing will be held as follows:

> Evidentiary hearing dates shall take place on these consecutive dates until the hearing is completed: March 8, 9, 10, 11, 12, 22, 23, 24, 25, and 26.

(Exhibit D, p. 5)

23. The Arbitration Schedule also provides elaborate, time-consuming and thus expensive procedures for expert reports (requiring more detail than required under the Federal Rules of Civil Procedure – *see,* Ex. D, p. 13-14),  as well as time consuming procedures for discovery disputes, prehearing exchange of documents, objections to document production, details as to how various types of communications should be made to the arbitrators, procedures for motions, procedures for the prefiling of letters seeking permission to file motions before they are filed, procedures for briefs filed in relation to any motions, and procedures for the calling of

witnesses at the 10-day hearing. In addition, the arbitrators reserve the power to "engage one or more panel experts" over and above those designated by the parties.

24. Conservatively, the above-described arbitration could well cost the parties in excess of six million dollars in legal fees, expert witness fees, panel expert witness fees, arbitrator fees, charges by the personal representative of the Estate for his attendance at the ten-day hearing with more time possibly needed.[1] This cost estimate is born out by the legal fees charged the Estate as of December 2, 2019. They total $3,284,636.59. (*See*, Exhibit A, the Estate's Interim Probate Account, as of December 2, 2019, at Schedule B thereto.) The fees charged by the personal representative through that same period are another $550,000. (*Id.*) However, most of the work in the arbitration has not been commenced as the Schedule (Exhibit D hereto) shows and given that intricate and time-consuming schedule, the contemplated activity will continue to consume millions of dollars.

### The Maine Attorney General Intervenes and Secures Binding Mediation

25. Pursuant to Maine Revised Statutes, Title 5, §194, Frey, the Maine Attorney General, has supervisory and protective authority over non-profit organizations operating in Maine, including Star of Hope. In that capacity, and having become concerned about the costs of the above-described litigation, which was causing the expenditure of money that would otherwise go for the benefit of a charity, representatives of his Office caused the Indiana Estate,

---

[1] For example, from the date hereof through the arbitration, just the cost of one lawyer during the hearing days (assuming 10 hours each day for ten days at $750 per hour), totals $750,000. Add the fees for each side to have two lawyers (conservative) the three panelists, and the hearing alone will take over three million dollars in fees. With all the other work imposed by the Arbitration Schedule (Exhibit D), that time expenditure could double without the costs of the experts and the charges of Mr. Brannan, the personal representative who charged $550,000 to the Estate between May, 2018 through October, 2019 (*see,* Exhibit A, Schedule B).

McKenzie, American Image, and another party, to mediate their disputes as they related to the Indiana Estate and its assets.

26. On November 25 and 26, 2019, these parties did mediate their disputes, with representatives from the Attorney General's Office in attendance, and with Portland-based mediator Patrick Coughlan of Conflict Solutions presiding. On November 26, 2019, after just two days, the Estate and McKenzie/American Image reached and executed an agreement, called a "Binding Term Sheet" (*see*, **Exhibit "E"** hereto)[2] which resolved the disputes between them.[3]

27. The Binding Term Sheet is comprehensive, resolving all disputes between the parties relating to past and future relations involving the Indiana artwork and its production.

28. It also provides:

This agreement is subject to normal and customary terms of settlement, including confidentiality and non-disparagement. This term sheet is intended to be binding and will be replaced by a more formal Settlement Agreement and Production Agreement. Payments, releases, dismissals and other consideration under this term sheet will be made after a more formal Settlement Agreement and Releases and Production Agreement are executed.

29. The Binding Term Sheet also has the following provision:

The arbitration between the Estate and AIA [American Image] pending in the AAA will be dismissed with prejudice.

(Exhibit E, p. 3)

---

[2] Because the parties had agreed that the substantive terms of the Binding Term Sheet would be subject to an as-yet worded confidentiality clause, and despite the Indiana Estate's unwillingness to resolve the wording of such a common clause, Plaintiff will seek to file the Mediation Binding Term Sheet under seal to preserve the confidentiality of the substantive terms out of an abundance of caution. Plaintiff does so despite the disclosure of some of its terms by the Indiana Estate in the arbitration in New York.

[3] There was another party to the mediation. Jamie Thomas, a long-time caregiver and confidant of Indiana, had claims against the Estate by which he alleged that after Indiana's death, the Estate reneged on many of Indiana's promises to him. His claims against the Estate were likewise the subject of a Binding Mediation Term Sheet as a result of the above-referenced mediation and the dispute between Thomas and the Estate is now fully resolved. The dispute between the Indiana Estate and American Image (Michael McKenzie) should likewise have been settled pursuant to the Binding Term Sheet.

30. It was clearly the import and the effect of the Binding Term Sheet that it end the costly New York arbitration. As the Indiana Estate's lawyers themselves informed the New York arbitrators shortly after the mediation:

> We are pleased to report that the parties have signed a term sheet that resolves all claims and counterclaims in this action.

(**Exhibit F**, hereto, Email of Estate Counsel, November 29, 2019.)

31. Instead of being dismissed with the attendant savings of millions of dollars the Indiana Estate now presses forward with the absurdly costly New York Arbitration.

32. That arbitration should not go forward and instead the parties should incorporate them into a settlement agreement after resolving the "normal and customary terms of settlement, including confidentiality and non-disparagement." (Exhibit E, p. 3) If, for some reason they cannot do so, although these terms are quite standard, the matter should be sent back to the mediator for resolution.

## COUNT ONE
### (Declaratory and Injunctive Relief)

33. McKenzie and American Image adopt by reference all the allegations made above as if all were specifically repleaded herein in their entirety.

34. There presently exists a justiciable controversy between McKenzie/American Image and the Indiana Estate as to the enforceability of the Binding Term Sheet attached hereto as Exhibit E.

35. McKenzie/dba American Image asserts that the Binding Term Sheet is binding and that it is sufficiently detailed so that, under the law of the state of Maine, (i) its terms are binding and they must be incorporated into a formal agreement adding the "normal and customary terms of settlement," such as confidentiality and release provisions, as specified by

the Binding Term Sheet, (ii) its substantive terms resolve the disputes between the parties so that relitigating those disputes in New York is an unnecessary waste of resources and attempting to do so is a violation of the Binding Term Sheet and should be enjoined, and (iii) if the parties themselves cannot come to agreement as to the "customary and ordinary terms of settlement" as contemplated by the Binding Term Sheet, the resolution of those terms should be referred back to Mr. Pat Coughlan of Conflict Solutions, who has expressed a willingness to act as mediator for the purpose of finalizing the Binding Term Sheet.

36. Conversely, the Indiana Estate contends that, even though fully executed, the Binding Term Sheet is not binding and that the disputes between the parties must be arbitrated in New York and are pressing that arbitration with all its attendant costs.

37. Because the arbitration is ongoing and because, if the Binding Term Sheet is enforceable as contended by McKenzie/American Image, this dispute about the enforceability of the Binding Term Sheet is ripe for this Court's decision, and it is respectfully requested that this Court decide that dispute.

38. The Binding Term Sheet not only disposed of the claims between the parties in just two days of mediation, it also conferred substantial rights to American Image which are reflected in the Term Sheet. These rights are unique, involving as they do the irreplaceable artwork of a renowned artist – an artist that American Image has spent millions of dollars to promote. Thus, the breach by the Indiana Estate of the rights conferred under the Term Sheet can not be compensated alone by money damages.

39. Accordingly, this Court should order specific enforcement of the Binding Term Sheet as authorized by Maine law and should enjoin the parties from pursuing the arbitration pending in New York and order the parties to forthwith confer in good faith to resolve the

remaining settlement terms, and if they are unable to do so within one week, they should be ordered to meet with Mediator Coughlan for their resolution.

WHEREFORE, McKenzie and American Image seek judgment as follows:

A. An order and judgment declaring that (i) the Binding Term Sheet is contractually binding between the parties, and (ii) the Binding Term Sheet is specifically enforceable;

B. An order preliminarily staying and thereafter permanently enjoining the parties from continuing with the New York arbitration and ordering the parties instead to forthwith confer in good faith to resolve the remaining settlement terms, and if they are unable to do so within one week, to meet with Mediator Coughlan for their resolution;

B. For allowable costs of suit; and

C. For such other and further relief as to this Court seems just and proper.

Dated July 25, 2020                                  Respectfully submitted,

/s/ *John J.E. Markham, II*
John J.E. Markham, II (Maine BBO No. 2674)
MARKHAM & READ
One Commercial Wharf West
Boston, Massachusetts 02110
Tel: (617) 523-6329
Fax: (617)742-8604
jmarkham@markhamread.com

-and-

908 Maine Street
Waldoboro, Maine 04572
Tel: (207) 790-8049

## Verification

I declare, under penalty of perjury, that I have read the foregoing Verified Complaint and believe that the factual statements therein stated are true and correct to the best of my knowledge and belief.

Executed this 25th day of July, 2020, in Katonah, New York.

*Michael McKenzie*

Michael McKenzie