# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | | |
|---|---|---|
| MICHAEL MCKENZIE, individually, and d/b/a American Image Art, | ) ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 2:20-cv-00262-JAW |
| | ) | |
| JAMES W. BRANNAN, as Personal Representative of the Estate of Robert Indiana, | ) ) ) | |
| | ) | |
| and | ) | |
| | ) | |
| AARON M. FREY, in his official capacity as Attorney General of the State of Maine, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## ORDER ON MOTIONS TO COMPEL ARBITRATION AND STAY PROCEEDINGS AND PRELIMINARY INJUNCTION

A longtime art publisher has filed suit to enforce the terms of a mediation agreement with a personal representative of the estate of a famous artist.  In response, the estate's personal representative moves to compel arbitration under the Federal Arbitration Act and to send the dispute to an arbitration proceeding in New York.  In his reply, the art publisher moves to enjoin the arbitration proceeding and asks the Court to decide whether the mediation agreement is enforceable.  Concluding the parties delegated the gateway issue of the agreement's arbitrability to the arbitrators, and that the defendant has not waived his right to compel arbitration, the Court grants the motion to compel arbitration and dismisses without prejudice

the motion for preliminary injunction, but stays this case pending the arbitrability determination by the arbitration panel.

## I.   BACKGROUND

### A.   Procedural History

On July 26, 2020, Michael McKenzie, individually, and d/b/a American Image Art (Mr. McKenzie) filed a complaint against James W. Brannan, as personal representative of the estate of Robert Indiana (the Estate) seeking a declaration by the Court that a mediation agreement the parties entered into was a specifically enforceable contract and requesting an order enjoining an ongoing arbitration proceeding in New York. *Compl.* (ECF No. 1). Aaron M. Frey, in his official capacity as Attorney General of the state of Maine (Maine Attorney General), was joined as a defendant pursuant to 5 M.R.S § 194(4). *Id.* On July 28, 2020, Mr. McKenzie filed the disputed mediation agreement as an attachment to the Complaint. *Pl. Michael McKenzie's Notice of Filing of Ex. E to Verified Compl.* (ECF No. 7), and on August 6, 2020, he filed a replacement of the underlying art production agreement as an attachment to the Complaint. *Pl. Michael McKenzie's Notice of Filing of Replacement Ex. B to Verified Compl.* (ECF No. 12).

On August 6, 2020, the Estate filed a consented-to motion to extend the deadline to answer the Complaint, *Def. James W. Brannan's Consented-To Mot. to Extend Deadlines* (ECF No. 13), and Mr. McKenzie responded, confirming his consent to the extension and notifying the Court that he planned to move for preliminary injunction within a week. *Pl. Michael McKenzie's Resp. to Def. James W. Brannan's*

2

*Consented-To Mot. to Extend Deadlines* (ECF No. 14).  On August 7, 2020 the Maine Attorney General filed a consented-to motion for an extension to answer the Complaint.  *Def. Attorney General's Consented-To Mot. to Enlarge Deadlines* (ECF No. 18).  The Court granted both motions for extension on August 7, 2020.  *Order Granting Mot. to Extend Time to File Resp. to Compl.* (ECF No. 16); *Order Granting Mot. to Extend Time to File Resp. to Compl.* (ECF No. 19).  On September 15, 2020, the Estate again moved for an extension of time to file an answer until September 28, 2020, *Mot. by Def. James W. Brannan, as the Personal Representative of the Estate of Robert Indiana, to Extend Deadline to Answer or Otherwise Respond to Compl.* (ECF No. 39), which the Court granted.  *Order Granting Def. James W. Brannan's Mot. for Extension of Time to Answer* (ECF No. 40).

On September 18, 2020, the Maine Attorney General answered the Complaint. *Answer of Aaron M. Grey in His Capacity as Attorney General of the State of Maine* (ECF No. 42).  On September 25, 2020, the Estate once more requested time to file an answer, requesting an extension to ten days after a decision by the Court on either the pending motion to compel arbitration or motion for preliminary injunction, *Mot. by Def. James W. Brannan, as the Personal Representative of the Estate of Robert Indiana, to Extend Deadline to Answer or Otherwise Respond to the Compl.* (ECF No. 48), which the Court granted.  *Order granting Mot. for Extension of Time to Answer* (ECF No. 49).

On August 7, 2020, the Estate filed a motion to compel arbitration and to stay the lawsuit.  *Def. James W. Brannan's Mot. to Compel Arbitration and Stay*

3

*Proceedings and Incorporated Mem. of Law* (ECF No. 15) (*Estate's Mot. to Compel Arbitration*).   On August 11, 2020, the Estate filed a supplemental declaration in support of its motion.   *Suppl. Decl. of Jessie F. Beeber in Further Supp. of Mot. to Compel Arbitration and Stay Proceedings* (ECF No. 22).   On August 14, 2020, Mr. McKenzie filed his response.   *Pl. Michael McKenzie's Opp'n to Def. James W. Brannan's Mot. to Compel Arbitration and Stay Proceedings* (ECF No. 24) (*McKenzie's Opp'n to Estate's Mot. to Compel Arbitration*).   On August 27, 2020, the Maine Attorney General filed his response.   *Def. Attorney General's Resp. to Def. Brannan's Mot. to Compel Arbitration and Stay Proceedings* (ECF No. 27) (*Maine Attorney General's Resp. to Estate's Mot. to Compel Arbitration*).   On August 28, 2020, the Estate replied separately to Mr. McKenzie's and the Maine Attorney General's responses.   *Def. James W. Brannan's Reply Mem. of Law in Further Supp. of Mot. to Compel Arbitration and Stay Proceedings and in Resp. to the Opp'n of Pl. Michael McKenzie* (ECF No. 32) (*Estate's Reply to McKenzie's Opp'n to Estate's Mot. to Compel Arbitration*); *Def. James W. Brannan's Reply in Further Supp. of Mot. to Compel Arbitration and Stay Proceedings and in Resp. to Opp'n Filed by Def. Aaron M. Frey, only in His Official Capacity as Attorney General of the State of Maine* (ECF No. 33) (*Estate's Reply to the Maine Attorney General's Resp. to Estate's Mot. to Compel Arbitration*).   On September 18, 2020, the Estate filed a declaration with attachments in further support of its motion to compel arbitration.   *Decl. of John C. Vazquez* (ECF No. 44).

On August 14, 2020, Mr. McKenzie filed a motion for preliminary injunction, seeking to enjoin the New York arbitration proceeding until this case is resolved. *Pl.'s Mot. for Prelim. Inj. with Supporting Mem. of Law* (ECF No. 23) (*McKenzie's Mot. for Prelim. Inj.*). The Estate filed its opposition and a supporting declaration with attachments on September 18, 2020. *Def. James W. Brannan's Opp'n to Pl. Michael McKenzie's Mot. for a Prelim. Inj.* (ECF No. 43) (*Estate's Opp'n to McKenzie's Mot. for Prelim. Inj.*); *Declaration of John C. Vazquez* (ECF No. 44). The Maine Attorney General filed his opposition on September 23, 2020. *Def. Attorney General's Opp'n to Pl.'s Mot. for Prelim. Inj.* (ECF No. 46) (*Maine Attorney General's Opp'n to McKenzie's Mot. for Prelim. Inj.*). On September 23, 2020, Mr. McKenzie replied to the Estate's opposition. *Pl. Michael McKenzie's Reply to Def. Brannan's Opp'n to McKenzie's Mot. for Prelim. Inj.* (ECF No. 47) (*McKenzie's Reply to Estate's Opp'n to McKenzie's Mot. for Prelim Inj.*).

On September 25, 2020, the Estate moved for leave to file a supplemental declaration in response to the Maine Attorney General's opposition to Mr. McKenzie's motion for preliminary injunction. *Def. James W. Brannan's Mot. for Leave to File Suppl. Decl. in Resp. to the Opp'n Filed by Def. Aaron M. Frey to Pl. Michael McKenzie's Mot. for Prelim. Inj.* (ECF No. 50). Mr. McKenzie stated that he had no objection, *Pl.'s Non-Objection to the Filing of the Suppl. Decl. by Def. James Brannan* (ECF No. 51), but the Maine Attorney General filed an opposition with an accompanying declaration, attaching two documents from the mediation negotiations. *Def. Attorney General's Opp'n to Estate's Mot. for Leave to File a Suppl.*

*Decl.* (ECF No. 52).  On September 30, 2020, the Court granted the Estate's motion for leave to file, *Order Granting Mot. for Leave to File a Suppl. Decl.* (ECF No. 53), and on the same day the Estate filed an affidavit in response to the Maine Attorney General's opposition.  *Decl. of Edward P. Boyle* (ECF No. 54).

On August 21, 2020, the Court held a telephone conference with the parties to discuss whether they could settle their dispute.  *Minute Entry* (ECF No. 28).  On August 28, 2020, Mr. McKenzie and the Estate filed a joint motion requesting an adjournment while the parties attempted to settle.  *Joint Mot. by Pl. Michael McKenzie and Def. James W. Brannan, as the Personal Representative of the Estate of Robert Indiana, to Adjourn Time to Inform this Court Whether They Will Agree to Mediate this Matter* (ECF No. 30).  The Maine Attorney General consented to the joint motion.  *Def. Attorney General's Resp. to Joint Mot. by Pl. Michael McKenzie and Def. James W. Brannan, as the Personal Representative of the Estate of Robert Indiana, to Adjourn Time to Inform this Court Whether They Will Agree to Mediate this Matter* (ECF No. 31).  The Court granted the joint motion on August 31, 2020.  *Order Granting Mot. to Amend Procedural Order* (ECF No. 34).  After several in-person meetings, the parties failed to settle the matter and on September 15, 2020 they asked the Court to resolve the issues presented in this case.  *Joint Status Report by Pl. Michael McKenzie and Def. James W. Brannan, as the Personal Representative of the Estate of Robert Indiana, Concerning Settlement Discussions* (ECF No. 37); *Minute Entry* (ECF No. 41).

### B.    Factual Background[1]

### 1.    The Parties

Robert Indiana was a famous American artist associated with the "pop art" movement of the 1960s.  *Compl.* ¶ 12.  He was born in the Midwest and moved for a time to New York before relocating to Vinalhaven, Maine—an island off Maine's coast—in 1976.  *Id.*  He lived in isolation in Vinalhaven, continuing to create art until his death on May 19, 2018.  *Id.*  James W. Brannan is the personal representative of the Indiana Estate and is a citizen of the state of Maine, residing in or around Rockland, Maine.  *Id.* ¶ 7.

While Mr. Indiana created many notable and acclaimed works of art, he is perhaps best known for his LOVE sculptures and prints.  *Id.* ¶¶ 12-13.  The LOVE piece was first displayed on a Museum of Modern Art Christmas card in 1965.  *Id.*  In 1970, Mr. Indiana created the first LOVE sculpture, and the artwork was made more famous after being used on a United States postal stamp distributed in 1973.  *Id.*  His works have since become world renowned pieces of art that have been featured in exhibitions around the world and can currently be found in the permanent collections of many celebrated museums.  *Id.* ¶ 15.

Due to the commercial success of his artwork, Mr. Indiana allegedly amassed a fortune of over $89,000,000.  *Id.* ¶ 16; *see id.*, Attach. 1, *State of Maine Interim*

---

[1]      A motion to compel arbitration is not controlled by Federal Rules of Civil Procedure 12(b)(6) or 12(c) but is made pursuant to the Federal Arbitration Act, 9 U.S.C. § 4.  *Soto v. State Indus. Prods., Inc.*, 642 F.3d 67, 72 n.2 (1st Cir. 2011).  "[T]he [C]ourt will consider facts alleged in the Complaint as well as the documents submitted by the parties in connection with the motion." *Dickey v. Nat'l Football League*, No. 17-cv-12295-IT, 2018 WL 4623061, at *2 (D. Mass. Sept. 26, 2018) (citing *Soto*, 642 F.3d at 72 n.2)

*Probate Account.*  In his will, Mr. Indiana bequeathed his entire estate, less debts and claims, to Star of Hope, Inc. (Star of Hope)—a Maine nonprofit corporation organized under the Maine Nonprofit Corporation Act (13-B.M.R.S., §§ 101 *et seq.*) and having its principal place of business in Vinalhaven.  *Compl.* ¶¶ 8, 17; *see Maine Attorney General's Opp'n to McKenzie's Mot. for Prelim. Inj.*, Attach. 1, *Decl. of Lawrence Sterrs.*  Star of Hope's mission is to "promote education of the visual arts through various means including Vinalhaven-based exhibitions, and a museum, artist-in-residence programs, and other outreach endeavors." *Id.* ¶ 17.

Aaron M. Frey is the Maine Attorney General and is a citizen of Maine, residing in or around Augusta, Maine.  *Id.* ¶ 9.  He is joined to this action "as is required under Maine Revised Statutes, Title 5, § 194(4)," which provides that the Maine Attorney General "must be made a party to all judicial proceedings in which the Attorney General is interested in the performance" of his duties, including the duty to "enforce due application of funds given or appropriated to public charities within the State and prevent breaches of trust in the administration of public charities." *Id.*; 5 M.R.S. § 194.  Because the Star of Hope is a Maine charity, Attorney General Frey was joined as a defendant in his official capacity.

Michael McKenzie is a long-time art publisher and collaborator now operating through his company, American Image Art.  *Id.* ¶ 18.  Mr. McKenzie started collaborating with Mr. Indiana in the mid-1970s and continued partnering with him until his death.  *Id.* ¶ 18.  Mr. McKenzie is a citizen of the state of New York and resides in Katonah, New York.  *Id.* ¶ 6.

### 2.   The 2008 Agreement

In 2008, Robert Indiana and Michael McKenzie d/b/a American Image Art entered into a publishing agreement for the purpose of allowing American Image Art to produce HOPE sculptures, paintings, objects and prints.  *Id.* ¶ 18; *see Pl. Michael McKenzie's Notice of Filing Replacement Ex. B to Verified Compl.*, Attach. 1, *Agreement for Art Editions* (*2008 Agreement*).  The HOPE artwork was created by Mr. McKenzie and is similar in style to the LOVE works.  *Id.* ¶ 14.  Mr. Indiana and American Image Art operated under this contract until Mr. Indiana's death in 2018.  *Compl.* ¶ 18.  The rights and obligations of Mr. Indiana under the 2008 Agreement now belong to the Indiana estate.  *Id.*

The 2008 Agreement lists the duties and responsibilities of Mr. Indiana and American Image Art and the specifics of production.  It also includes an arbitration clause:

> Any disputes will be settled by arbitration through the American Arbitration Association, governed by laws of the State of New York.

*2008 Agreement* at 6.  The effect of this arbitration clause is the subject of the present dispute.

### 3.   The New York Litigation and Arbitration

The dispute here is the latest chapter in a two-year-long legal battle over the rights to publish Mr. Indiana's artwork that began when a company known as Morgan Art Foundation Limited (Morgan Art) initiated litigation in New York.  *Id.* ¶¶ 19-20.  Morgan Art, an offshore Bahamian entity, claims to have contract rights to publish and promote certain Robert Indiana artwork, and claims that these rights

were breached by Mr. McKenzie and the Estate.  *Id.* ¶ 19.  On May 18, 2018, Morgan Art filed a complaint for damages against Mr. Indiana (later naming the Estate after he died) and Mr. McKenzie, d/b/a American Image Art, in the United States District Court for the Southern District of New York.  *Id.* ¶ 20.  The action is entitled *Morgan Art Foundation Limited v. Michael McKenzie, American Image Art, Jamie Thomas, and James W. Brannan as Personal Representative of the Estate of Robert Indiana, et al.*, 2018-cv-04438 (S.D.N.Y.) (New York Litigation).[2]

On July 13, 2018, Mr. McKenzie answered Morgan Art's complaint and filed cross claims against the Estate, alleging that Mr. Indiana authorized Mr. McKenzie to produce and sell certain artwork pursuant to the 2008 Agreement.  *Verified Answer, Counterclaims, and Crossclaims of Michael McKenzie and American Image Art, id.* (S.D.N.Y. July 13, 2018), ECF No. 29.  On September 7, 2018, the Estate moved to compel arbitration for Mr. McKenzie's claims arising under or relating to the 2008 Agreement.  *Notice of Mot. to Compel Arbitration, id.* (S.D.N.Y. Sept. 7, 2018), ECF No. 69.  On October 9, 2018, Judge Torres of the Southern District of New York granted the Estate's motion and stayed those claims, noting that Mr. McKenzie "agree[d] to arbitrate its crossclaims against the Estate" and the parties "agree[d] [the 2008 Agreement] governs the claims between them."  *Order Granting Mot. to Compel Arbitration, id.* at 2 (S.D.N.Y. Oct. 9, 2018), ECF No. 94.

---

[2]       Jamie Thomas was the long-time caregiver and confidant of Mr. Indiana.  Mr. Thomas is a defendant in the New York Litigation and had asserted claims against the Estate.  The dispute between Mr. Thomas and the Estate is now fully resolved and is not relevant to the dispute here.  *Compl.* at 10 n.3.

On June 24, 2019, the Estate initiated an arbitration against Mr. McKenzie by filing a demand for arbitration with the American Arbitration Association (AAA) (the New York Arbitration). *Estate's Reply to McKenzie's Opp'n to Estate's Mot. to Compel Arbitration*, Attach. 2, *Demand for Arbitration and Statement of Claim*. Mr. McKenzie responded on August 22, 2019, asserting counterclaims against the Estate in the New York Arbitration. *Id.*, Attach. 4, *Answering the Claimant's Demand for Arbitration and Statement of Claim*. The New York Arbitration is ongoing with document production due on November 10, 2020, a telephone conference scheduled for November 23, 2020, and an evidentiary hearing scheduled for March 2021. *See Decl. of John C. Vazquez*, Attach. 32, *Modified Schedule and Procedures*.[3]

### 4.   The Maine Mediation

The Maine Attorney General intervened in the dispute over concerns that the high costs of litigation would impact the Star of Hope charity. Mr. McKenzie claims the litigation has cost the Estate a total of $3,284,636.59 as of October 1, 2019. *McKenzie's Mot. for Prelim. Inj.* at 6 n.4; *see Compl.*, Attach. 1, *Maine Interim Probate Account* at 5. The Maine Attorney General directed Mr. McKenzie and the Estate to

---

[3]      On July 30, 2020, Mr. McKenzie requested the AAA Panel in the New York Arbitration stay the arbitration until this Court resolves the present dispute. *Estate's Mot. to Compel Arbitration*, Attach. 5, *Resp't's Letter Application for a Stay*. On August 5, 2020, the Estate similarly requested a stay. *Id.*, Attach. 6, *Estate Letter to AAA*. On August 8, 2020, the AAA Panel responded to the parties, stating it was "skeptical" that the parties will have a quick decision by the Court, and it requested additional materials from the parties. *McKenzie's Mot. for Prelim. Inj.*, Attach. 3, *Email from AAA Panel to Parties, Ruling on Parties' Appl. for a Suspension of Deadlines*. On September 18, 2020, the AAA Panel issued a modified scheduling order "in response to the Parties' joint application to suspend discovery proceedings in this arbitration until the end of October 2020," noting that the parties complied with its request for information. *Decl. of John C. Vazquez*, Attach. 32, *Modified Schedule and Procedures*. It appears that the New York Arbitration is ongoing and the AAA Panel has only postponed discovery until November.

mediate their dispute, and on November 25 and 26, 2019, the parties met in Portland, Maine, with representatives from the Maine Attorney General's office in attendance, and with Portland-based mediator Patrick Coughlin of Conflict Solutions presiding. *Compl.* ¶¶ 25-26.[4]

On November 26, 2019, the Estate and Mr. McKenzie reached an agreement titled "Confidential and Binding Term Sheet" (Mediation Term Sheet) that purported to resolve the disputes between them.[5]  *Id.* ¶ 26; *see Pl. Michael McKenzie's Notice of Filing of Ex. E to Verified Compl.*, Attach. 1, *Confidential and Binding Term Sheet (Mediation Term Sheet)*.  It is this agreement that Mr. McKenzie now seeks to enforce.

## II.   POSITIONS OF THE PARTIES

### A.    Motion to Compel Arbitration and Stay Proceedings

#### 1.    The Estate's Motion

The Estate asks the Court to compel arbitration and stay these proceedings pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. §§ 3, 4, arguing that "the broad arbitration clause in the parties' 2008 Agreement mandates that this new dispute, like all other disputes between these parties, be resolved through arbitration."  *Estate's Mot. to Compel Arbitration* at 2.  The Estate further argues that "if there is any question about the scope of the agreement to arbitrate, under the AAA Rules and United States Supreme Court precedent that issue should be decided by

---

[4]      Jamie Thomas was also present, but only Mr. McKenzie and the Estate signed the agreement. *Compl.* at 10 n.3.

[5]      In his briefs, Mr. McKenzie refers to this document as the "Binding Term Sheet."  However, as the "binding" nature of the agreement is directly at issue in this case, the Court refers to it as the "Mediation Term Sheet."

the AAA Panel, and not by this Court." *Id.* Therefore, "at a minimum," the Estate contends that the Court should stay this action and refer to the AAA Panel the "gateway question" of arbitrability. *Id.* at 2-3.

In its argument, the Estate lays out a three factor test on whether to grant a motion to compel arbitration brought pursuant to the FAA, contending that the Court must find that:

> (i) there exists a written agreement to arbitrate, (ii) the dispute in question falls within the scope of that arbitration agreement, and (iii) the party seeking an arbitral forum has not waived its rights to arbitration.

*Id.* at 7 (quoting *Bangor Hydro-Elec. Co. v. New England Tel. & Tel. Co.*, 62 F. Supp. 2d 152, 155 (D. Me. 1999)).

As to the first factor, the Estate claims that "there can be no dispute that there is a written agreement to arbitrate." *Id.* It argues that both Mr. McKenzie and the Estate are signatories to the 2008 Agreement, which "contains a broad agreement to resolve *any* disputes by AAA arbitration," and that Judge Torres already found the arbitration clause was valid and enforceable when she granted the Estate's motion to compel arbitration in the New York Litigation. *Id.* (emphasis added by the Estate). The Estate further states that Mr. McKenzie has never denied that the arbitration clause is binding and enforceable and points to the fact that it was Mr. McKenzie who initially sought arbitration in the New York Litigation. *Id.*

As for the second factor, citing for support *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643 (1986), the Estate claims the dispute falls within the "broad ambit" of the 2008 Agreement's arbitration clause. *Id.*

at 8.  Because the arbitration clause states that "[a]ny disputes will be settled by arbitration," Mr. McKenzie must present "forceful evidence" that the parties intended specifically to exclude the new dispute from that clause.  *Id.*  The Estate argues that even if the Mediation Term Sheet terminated the underlying 2008 Agreement, which the Estate does not concede, the arbitration clause is still enforceable because, as a matter of arbitration law, "unless the parties provided otherwise, an arbitration provision is severable from the remainder of the contract."  *Id.* at 9 (quoting *Biller v. S-H OpCo Greenwich Bay Manor, LLC*, 961 F.3d 502, 512 (1st Cir. 2020)).

Turning to the third factor, the Estate claims that it "has not waived any agreement to arbitrate" because it has not engaged in substantive litigation on the merits in this action, has not yet filed an answer or a motion to dismiss, it moved to compel arbitration promptly, and continues to pursue its rights in the New York Arbitration.  *Id.*

Finally, the Estate argues that "at a minimum," the "gateway issue of whether [Mr.] McKenzie's new dispute falls outside the scope of the arbitration agreement should be decided by the AAA Panel, and this Court should enter a stay of these proceedings to allow the AAA Panel to do so."  *Id.*  "By agreeing to arbitration 'through the AAA,' [Mr.] McKenzie and the Estate also agreed to accept and incorporate all AAA arbitration rules into their agreement."  *Id.* at 10 (citing AAA Commercial Arbitration Rules and Mediation Procedures, Rule 1(a), https://www.adr.org/sites/default/files/Commercial%20Rules.pdf (*AAA Rules*)).  The

Estate highlights AAA Rule 7(a) as "clearly and unmistakably" providing that the arbitrators should decide any threshold issues of arbitrability. *Id.*

### 2.    Michael McKenzie's Opposition

Mr. McKenzie opposes the Estate's motion, arguing that this Court, not New York, is the proper forum, and that the arbitrability of the Mediation Term Sheet is for this Court to decide. *McKenzie's Opp'n* at 1.  He contests the Estate's characterization of the facts and interpretation of the Mediation Term Sheet but does not argue the merits of the Term Sheet's enforceability because, in his view, that issue cannot be finally determined on the Estate's motion and the merits are more relevant to Mr. McKenzie's motion for preliminary injunction. *Id.* at 2 n.1.

Mr. McKenzie's first argument is that this Court is the proper forum to hear the dispute because "Maine has the more substantial relationship to and interest in the performance of the Binding Term Sheet." *Id.* at 6.  Maine is "the residence of the defendant Estate, its personal representative, the mediator and the charity to which the rights and obligations of the Binding Term Sheet will be transferred, as well as the location of the Attorney General, of the mediation activity and of the performance of a substantial part of the rights and obligations set forth in the Binding Term Sheet." *Id.* at 7 n.4.  The Mediation Term Sheet contains neither an arbitration provision nor a choice of law provision, and Judge Torres' October 2018 order compelling arbitration should not be read to compel arbitration on the subsequently reached Mediation Term Sheet from November 2019. *Id.* at 6-7.

Mr. McKenzie next argues that arbitrability is an issue for the Court and, like the Estate, cites *AT&T Technologies* for support. *Id.* at 7. He contends that the Mediation Term Sheet, which contains no arbitration provision, is the current contract between the parties, and "that contract specifically revoked the prior [2008] Agreement and specifically provided for dismissal of the arbitration of the issues in dispute under the now revoked [2008] Agreement." *Id.* at 8. He cites *Biller* for the contention that a party seeking to compel arbitration under the FAA must demonstrate that a valid arbitration agreement exists and "[t]hose issues, which implicate '[w]hether or not a dispute is arbitrable,' are typically for the court to decide." *Id.* Furthermore, Mr. McKenzie argues that parties may agree to have an arbitrator decide questions of arbitrability, but the parties must agree by "*clear and unmistakable* evidence." *Id.* at 9 (citing *Biller*, 961 F.3d at 509) (emphasis added by McKenzie). He claims the 2008 Agreement's arbitration provision does not meet this "demanding" standard and the Mediation Term Sheet, which "clearly and undeniably extinguishes the [2008] Agreement," does not suggest that any disputes under its terms should be arbitrated. *Id.* Because "there is no written agreement to arbitrate the Binding Term Sheet," the Estate's motion should be denied. *Id.* at 10.

### 3. The Maine Attorney General's Response

The Maine Attorney General responds to the Estate's motion and argues that "this Court can and should decide both the arbitrability and the enforceability of the Binding Term Sheet" and the Mediation Term Sheet "is not an extension of the parties' original 2008 contract or otherwise subject to arbitration." *Maine Attorney*

*General's Resp. to Estate's Mot. to Compel Arbitration* at 2-3.  However, the Maine Attorney General clarifies that he believes the Mediation Term sheet is not enforceable against the Estate because Mr. McKenzie "has breached and repudiated it." *Id.* at 3 n.1.  He stresses that the goal of "[s]aving time and expense to maximize the value of the assets of the Indiana Estate for the charitable beneficiary" is of "critical importance" to the Maine Attorney General, and "[t]his Court is likely to provide a quicker and thus less expensive resolution of the enforceability question than either the AAA Panel or the Southern District of New York." *Id.*

Like Mr. McKenzie, the Maine Attorney General argues that the Court should decide the issue of arbitrability and states that an arbitrator should decide arbitrability only if the parties have so agreed by "clear and unmistakable" evidence. *Id.* at 3.  He contends the 2008 Agreement's arbitration clause does not satisfy this "demanding" standard, considering the dispute arises from the Mediation Term Sheet, which contains no arbitration provision and was executed twelve years after the 2008 Agreement. *Id.* at 4.  The Maine Attorney General cites *Biller* and concludes that "[n]ot only must a court, not an arbitrator, determine whether the Binding Term Sheet is arbitrable, but this court should make that determination." *Id.* (emphasis added by Maine Attorney General).

Again, like Mr. McKenzie, the Maine Attorney General argues that the dispute should not be arbitrated under *Bangor Hydro-Electric* because there is no written agreement to arbitrate. *Id.* at 5.  He argues the 2008 Agreement's arbitration clause

"cannot be read to apply to a dispute arising from a subsequent agreement between the parties executed 12 years later."  *Id.*

### 4.     The Estate's Reply to Michael McKenzie's Opposition

The Estate replies to Mr. McKenzie, repeating its arguments that the AAA Panel should decide whether this case belongs in arbitration and, even if this Court decides the issue of arbitrability, it should conclude that Mr. McKenzie's claim belongs in arbitration.  *Estate's Reply to McKenzie's Opp'n to the Estate's Mot. to Compel Arbitration* at 3, 6.

The AAA Panel should decide the issue of arbitrability because "[b]y agreeing to arbitration 'through the AAA,' the parties agreed to accept and incorporate all of the AAA arbitration rules into that agreement," including AAA Rule 7(a), which provides that it is for the arbitrators to decide any threshold issues of arbitrability. *Id.* at 3.  The Estate acknowledges the "clear and unmistakable" standard, but claims "the First Circuit has held that rule 7(a)'s language is 'about as "clear and unmistakable" as language can get . . ..'"  *Id.* (citing *Awuah v. Coverall N. Am., Inc.*, 554 F.3d 7, 11 (1st Cir. 2009)).  Moreover, the Estate argues that the Mediation Term Sheet did not revoke the 2008 Agreement and that Mr. McKenzie previously argued in the New York Arbitration that the 2008 Agreement had not terminated.  *Id.* at 4. Even if the Mediation Term Sheet did revoke the 2008 Agreement, that "would not invalidate the parties' agreement to arbitrate, or take the issue of arbitrability away from the arbitrators" because unless an agreement provides otherwise, an arbitration clause is severable from the remainder of the contract.  *Id.* at 4-5.  Furthermore, the

Mediation Term Sheet did not dismiss the New York Arbitration because the Term Sheet itself states that "[p]ayments, releases, *dismissals* and other consideration under this term sheet will be made *after* a more formal Settlement Agreement and Releases and Production Agreement are executed." *Id.* at 5-6 (quoting *Mediation Term Sheet* at 3) (emphasis added by the Estate).

In the alternative, the Estate argues that even if the Court decides the question of arbitrability, the dispute belongs in arbitration because of the 2008 Agreement's broad arbitration clause. *Id.* at 6-7.

Finally, the Estate requests that its motion to compel arbitration be heard ahead of Mr. McKenzie's motion for preliminary injunction, as doing so would "save judicial resources, and the parties' time and expense." *Id.* at 7.

### 5.   The Estate's Reply to the Maine Attorney General's Response

The Estate separately replies to the Maine Attorney General's response and makes four points: 1) the AAA Panel should decide arbitrability, 2) this dispute with Mr. McKenzie belongs in arbitration, 3) the Estate agrees with the Maine Attorney General that the Mediation Term Sheet is not enforceable, and 4) granting the Estate's motion will save the parties time and money. *Estate's Reply to Maine Attorney General's Resp. to the Estate's Mot. to Compel Arbitration* at 2, 4-6.

First, the Estate repeats its argument that because the 2008 Agreement's arbitration clause specifically provides for arbitration "through the American Arbitration Association," the parties agreed to accept and incorporate all the AAA arbitration rules, including Rule 7(a). *Id.* at 2-3. The Estate distinguishes *Biller*,

noting that "unlike the arbitration clause in the 2008 Agreement, the arbitration clause in *Biller* did not state that arbitration would be 'through the America Arbitration Association,' and therefore did not incorporate the AAA Rules." *Id.* at 4.

Second, the Estate again points to the "broad ambit" of the arbitration clause's language that states "*[a]ny disputes* will be settled by arbitration," and therefore this dispute belongs in arbitration. *Id.* at 4-5 (emphasis added by the Estate).

Third, while the Court need not decide the merits of whether the Mediation Term Sheet is enforceable, the Estate agrees with the Maine Attorney General that the Term Sheet is not enforceable. *Id.* at 5-6.

Finally, while the Estate "appreciates the Attorney General's desire for the Estate to save time and resources," sending the new dispute to the AAA Panel "would be more efficient than allowing it to proceed in this forum." *Id.* at 6. Because the Mediation Term Sheet should ultimately be found unenforceable, the Estate argues it would be a waste of resources for the Court to hear Mr. McKenzie's claims, only to dismiss them and allow the dispute to continue in the New York Arbitration. *Id.* at 6-7.

### B.   Motion for Preliminary Injunction

#### 1.   Michael McKenzie's Motion

Mr. McKenzie asks the Court to preliminarily enjoin the Estate from proceeding with the New York Arbitration until this case is resolved. *McKenzie's Mot. for Prelim. Inj.* at 1. He lays out the four-factor preliminary injunction test and concludes all the factors weigh in favor of granting the injunction. *Id.* at 2.

He argues that he has a strong likelihood of success on the merits, first contending that Maine law governs the issues relating to the Mediation Term Sheet. *Id.* at 9-10. He contends that the parties manifested an intent to be bound by the Mediation Term Sheet's terms, making it a binding settlement agreement. *Id.* at 10. He says that the Mediation Term Sheet set out specific terms and called for dismissal of the New York Arbitration. *Id.* at 11-12. Citing Maine caselaw, he claims that "[t]he fact that there is a provision requiring reducing the Binding Term Sheet to a more formal document does not mean that an enforceable agreement was not reached by the Binding Term Sheet itself." *Id.* at 13-15. Relatedly, he argues he is likely to succeed on the merits because the Mediation Term Sheet has already resolved the dispute underlying the New York Arbitration. *Id.* at 15. As in his opposition to the Estate's motion to compel arbitration, Mr. McKenzie argues that the Court should decide the enforceability of the Mediation Term Sheet and should find that it replaced the 2008 Agreement and dismissed the New York Arbitration. *Id.* at 16-17.

Mr. McKenzie claims he will "suffer irreparable harm if forced to arbitrate and incur the associated costs after the matter was settled." *Id.* at 17. Specifically, he states that he "risks losing the benefits conferred by the Binding Term Sheet," such as "losing an irretrievable part of the market" and "the right to control [his] part of the brand." *Id.* at 17-18.

As for the other factors, Mr. McKenzie contends that the balance of hardships weighs in his favor because the issue here can be resolved "fairly quickly" and the New York Arbitration can be stayed until this Court decides the case, but

Mr. McKenzie will suffer irreparable harm if forced to arbitrate. *Id.* at 18-19. The public interest is also served because "[t]he public interest in promoting and enforcing settlements without more favors granting an injunction." *Id.* at 19. The Star of Hope charity would benefit by not continuing to spend money on a costly arbitration. *Id.* at 19-20.

### 2.    The Estate's Opposition

The Estate claims that Mr. McKenzie "does not come close" to carrying the burden for preliminary injunction, characterizing preliminary injunction as "an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Estate's Opp'n to McKenzie's Mot. for Prelim. Inj.* at 1., 10 (citing *Dobson v. Dunlap*, 576 F. Supp. 2d 181, 188 (D. Me. 2008)).

The Estate rejects Mr. McKenzie's claim that he will suffer irreparable harm. The Estate argues that the incurring of legal fees and the risk of losing benefits conferred under the Mediation Term Sheet are not sufficient to justify an injunction. *Id.* at 11. It then contends that Mr. McKenzie is not likely to succeed on the merits because the Mediation Term Sheet is not enforceable. *Id.* at 14. This is so, in the Estate's view, because Mr. McKenzie did not intend it to be binding—the Mediation Term Sheet does not contain all the necessary material terms, it specifically contemplates being replaced by a more formal settlement agreement, and Mr. McKenzie's post-mediation conduct showed a lack of intent to be bound. *Id.* at 15-18. Specifically, the Estate alleges that Mr. McKenzie breached and repudiated

the Mediation Term sheet by violating terms of confidentiality and non-disparagement. *Id.* at 18-19. These breaches, the Estate maintains, relieve it of any obligation to perform. *Id.* The balance of hardships does not favor Mr. McKenzie because he has not shown any urgent need for an injunction and preliminary injunction is a form of equitable relief, but "[Mr.] McKenzie comes to this Court with unclean hands." *Id.* at 19. Finally, the Estate argues that the public interest reflects a "strong federal policy favoring arbitration of disputes" and weighs against Mr. McKenzie, who it claims is "forum shopping." *Id.* at 20.

### 3.    Maine Attorney General's Opposition

The Maine Attorney General also weighs in on the preliminary injunction, agreeing with the Estate that the motion should be denied. He argues that Mr. McKenzie is not likely to succeed on the merits because the Mediation Term Sheet is unenforceable. *Id.* at 3. Like the Estate, the Maine Attorney General claims Mr. McKenzie breached both the confidentiality and non-disparagement terms "within days" after signing the Mediation Term Sheet. *Id.* These breaches are material and terminate the agreement or, alternatively, show there was no "meeting of the minds" and thus "no enforceable contract came into existence." *Id.* The Maine Attorney General argues Mr. McKenzie has not shown irreparable harm because "[i]t is well settled that economic damages, standing alone, do not constitute irreparable injury." *Id.* at 4 (quoting *Surplec, Inc. v. Maine Pub. Serv. Co.*, 495 F. Supp. 2d 147, 150 (D. Me. 2007)). The remaining factors also weigh against preliminary injunction because the Mediation Term Sheet "is not in the best interests of the Star of Hope

23

Foundation" and "[t]he public interest cannot be served by enforcing terms of a long-term contract to which a charity will [be] bound when it had no input into the terms and believes they are against its best interest." *Id.* at 4-5.

### 4. Michael McKenzie's Reply to the Estate

Mr. McKenzie replies only to the Estate, making four counterpoints. First, he requests a hearing on the merits under Federal Rule of Civil Procedure 65(a)(2), which "allows a definitive, early resolution." *Id.* at 1-2. Second, he disagrees with the Estate's characterization of the Mediation Term Sheet as merely "a preliminary agreement to agree." *Id.* at 2. He points to the document's title—Binding Term Sheet—and lists all the specific details of performance it provides. *Id.* at 2-3. Third, Mr. McKenzie intended the Mediation Term Sheet to be binding, and in fact he says it was the Estate that was dragging its feet in finalizing a settlement agreement. *Id.* at 4. Furthermore, the draft the Estate sent back included new terms. *Id.* He also denies that he "disparaged" the Estate in violation of the agreement, as his comment "finally the dirt bags lose" was directed at another party in the New York Litigation, Morgan Art, who had disparaged Mr. McKenzie. *Id.* at 5-6. Fourth, he reasserts his claims of irreparable harm because "he was earning millions for [Mr.] Indiana before his death and thus the ongoing loss caused by the Estate blocking production is substantial" and the Estate's claims challenging Mr. McKenzie's rights and authenticity "harm the brand." *Id.* at 7.

## III.   LEGAL STANDARD

Pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 *et seq.*, "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* § 2.   Under the FAA, "Congress set a 'liberal federal policy favoring arbitration.'" *Rivera-Colón v. AT&T Mobility Puerto Rico, Inc.*, 913 F.3d 200, 207 (1st Cir. 2019) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011)).   In deciding whether to compel arbitration, a court must determine whether "(i) there exists a written agreement to arbitrate, (ii) the dispute falls within the scope of that arbitration agreement, and (iii) the party seeking an arbitral forum has not waived its right to arbitration."   *Gove v. Career Sys. Dev. Corp.*, 689 F.3d 1, 4 (1st Cir. 2012) (citation omitted).

Arbitration agreements are treated like all other contracts.   *Rivera-Colón*, 913 F.3d at 207 (citing *Buckeye Check Cashing, Inc., v. Cardegna*, 546 U.S. 440, 443 (2006)).   As a result, "principles of state contract law control the determination of whether a valid agreement to arbitrate exists."   *Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino*, 640 F.3d 471, 475 (1st Cir. 2011) (citation omitted).   A valid contract under Maine law requires "the parties mutually assent to be bound by all its material terms, the assent is either expressly or impliedly manifested in the contract, and the contract is sufficiently definite to enable the court to ascertain its

exact meaning and fix exactly the legal liabilities of each party." *Campbell v. First Am. Title Ins. Co.*, 644 F. Supp. 2d 126, 136 (D. Me. 2009) (citation omitted).[6]

## IV. DISCUSSION

The parties dispute whether the Mediation Term Sheet is enforceable and supersedes the 2008 Agreement.   In reviewing the language from the 2008 Agreement's arbitration clause, however, whether the Mediation Term Sheet is enforceable is a secondary question.   The first question and the one that resolves this motion is who decides whether the claims are arbitrable—a gateway question known as "arbitrability." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002); *Fantastic Sams Franchise Corp. v. FSRO Ass'n Ltd.*, 683 F.3d 18, 24-25 (1st Cir. 2012).   The Court must determine whether the 2008 Agreement delegates the authority to decide arbitrability to the arbitrator rather than the Court.

Analyzing the language of the 2008 Agreement, the Court concludes that the 2008 Agreement's arbitration clause directs an arbitrator, rather than this Court, to determine the threshold question of whether the dispute regarding the enforceability

---

[6]     Mr. McKenzie argues that under the Restatement (Second) of Conflicts of Laws' "most significant contacts" approach, the Court should apply Maine law here. *McKenzie's Mot. for Prelim. Inj.* at 9-10.  However, it is arguable that the Court should apply New York law, as the 2008 Agreement contains a choice of law provision that specifically calls for disputes to be "governed by laws of the State of New York." *2008 Agreement* at 6.  The Estate does not argue the issue but states that "[w]hile either Maine or New York law could theoretically apply in this case, here there is no conflict between them as to the issues presented." *Estate's Opp'n to McKenzie's Mot. for Prelim. Inj.* at 14 n.2.  Like Maine, New York law requires "a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." *Express Indus. and Terminal Corp. v. New York State Dep't of Transp.*, 715 N.E. 2d 1050, 1053 (N.Y. 1999).  Mr. McKenzie does not argue that there is a conflict here.   Because the Court concludes that Mr. McKenzie has not demonstrated that there is a conflict between Maine and New York law or that whatever conflicts exist would make a difference in the resolution of the issues before the Court, the Court need not decide which law to apply. *See Okmyansky v. Herbalife Int'l of Am., Inc.*, 415 F.3d 415 (1st Cir. 2005) ("[W]hen the resolution of a choice-of-law determination would not alter the disposition of a legal question, a reviewing court need not decide which body of law controls") (citations omitted)).

of the Mediation Term Sheet is arbitrable.  Therefore, the Court does not make any findings regarding whether this dispute is arbitrable or whether the Mediation Term Sheet is enforceable.  The Court further concludes that because the arbitrator must decide the question of arbitrability, the motion to preliminarily enjoin the New York Arbitration is moot.

### A.      Motion to Compel Arbitration and Stay the Proceeding

#### 1.      Arbitrability

##### a.      General Principles

Black's Law Dictionary defines "arbitrability" as "[t]he status, under applicable law, of a dispute's being or not being resolvable by arbitrators because of the subject matter." *Arbitrability*, BLACK'S LAW DICTIONARY (10th ed. 2014); *see also Kristian v. Comcast Corp.*, 446 F.3d 25, 42 (1st Cir. 2006) (discussing the typical questions of arbitrability).  "When a dispute arises, the parties sometimes may disagree not only about the merits of the dispute but also about the threshold arbitrability question— that is, whether their arbitration agreement applies to the particular dispute." *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524, 527 (2019).  Generally, this "question of arbitrability, is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Howsam*, 537 U.S. at 83 (internal quotation marks and emphasis omitted) (citation omitted); *see also Clough v. Brock Servs., LLC*, No. 2:19-cv-00050-JAW, 2019 U.S. Dist. LEXIS 136117, at *18-19 (D. Me. Aug. 13, 2019); *Johnson v. Polaris Sales, Inc.*, 257 F. Supp. 2d 300, 305 (D. Me. 2003) (arbitrability questions generally fall into two categories: whether a valid

27

arbitration agreement exists and the scope of an arbitration agreement).  "For such gateway questions, a court 'should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so.'"  *Patton v. Johnson*, 915 F.3d 827, 835 (1st Cir. 2019) (quoting *Henry Schein, Inc.*, 139 S. Ct. at 531 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995))).  Clear and unmistakable "pertains to the parties' manifestation of intent, not the agreement's validity."  *Rent-A-Center West, Inc. v. Jackson*, 561 U.S. 63, 69, n.1 (2010); *Bodine v. Cook's Pest Control Inc.*, 830 F.3d 1320, 1324 (11th Cir. 2016) ("The parties to a contract may agree to have an arbitrator, rather than a court, determine whether the contract's arbitration agreement is enforceable").

Clear manifestation of intent to arbitrate arbitrability is generally accomplished by a delegation clause, which is an "agreement[ ] to arbitrate threshold issues concerning the arbitration agreement."  *Danley v. Encore Capital Grp., Inc.*, 680 F. App'x 394, 395-96 (6th Cir. 2017) (citation omitted); *Clough*, 2019 U.S. Dist. LEXIS 136117, at *19.  In *Rent-A-Center*, the delegation provision directed that it was for an arbitrator to decide "any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement, including . . . any claim that all or any part of this Agreement is void or voidable."  561 U.S. at 66; *see also Danley*, 680 F. App'x at 398 (concluding that the parties "clearly and unmistakably" intended for an arbitrator to decide "gateway issues relative to their claims" where the delegation provided "all claims relating to your account, a prior related account, or our relationship are subject to arbitration, including Claims regarding the

application, enforceability, or interpretation of this Agreement and this arbitration provision") (alterations and citations omitted); *Clough*, 2019 U.S. Dist. LEXIS 136117, at *20-21 (concluding that the parties "clearly and unmistakably" intended that an arbitrator would decide issues of arbitrability where the parties agreed the arbitrator should decide disputes "arising out of or relating to: all issues of arbitrability").

A challenge to the entire contract or to another provision within the contract "does not prevent a court from enforcing a specific agreement to arbitrate." *Rent-A-Center*, 561 U.S. at 70. An arbitration provision is severable from the remainder of the challenged contract even where "the underlying contract is itself an arbitration agreement." *Id.* at 72. That is because "[a]pplication of the severability rule does not depend on the substance of the remainder of the contract." *Id.*

The severability rule applies to delegation provisions. *Id.* ("[U]nless . . . the delegation provision [is] specifically [challenged], we must treat it as valid under [FAA] § 2, and must enforce it under [FAA] §§ 3 and 4, leaving any challenge to the validity of the [a]greement as a whole for the arbitrator"). Thus, if the record shows a clear and unmistakable intent by the parties to delegate to an arbitrator questions of arbitrability, the Court must follow the terms of the contract. *Henry Schein*, 139 S. Ct. at 529; *Rent-A-Center*, 561 U.S. at 72; *but see Foss v. Circuit City Stores, Inc.*, 477 F. Supp. 2d 230, 235 (D. Me. 2007) (whether a contract was ever *formed* is for a court to decide) (collecting cases) (emphasis added).

### b.    The 2008 Agreement

The 2008 Agreement provides in part:

Any disputes will be settled by arbitration through the American Arbitration Association, governed by the laws of the State of New York.

*2008 Agreement* at 6.

Mr. McKenzie argues that "[a]rbitrability is decided by courts, not arbitrators, unless an agreement specifically states otherwise and there is no such agreement here." *McKenzie's Opp'n to Estate's Mot. to Compel Arbitration* at 1. He recites the standard that "[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *Id.* at 7 (quoting *AT&T Techs., Inc.*, 475 U.S. at 648-49).

Mr. McKenzie does not specifically challenge the existence of the 2008 Agreement and its arbitration clause. Rather, Mr. McKenzie argues that the Mediation Term Sheet is enforceable and supersedes the entire 2008 Agreement and therefore, no valid agreement to arbitrate exists between himself and the Estate. *Id.* at 8-9. Given the 2008 Agreement's direct and broad delegation language, the Court concludes that it demonstrates a clear and unmistakable intent to have an arbitrator decide whether the Mediation Term Sheet is enforceable and whether the 2008 Agreement has been superseded and remains valid.

At first glance, the arbitration clause in the 2008 Agreement does not contain a delegation provision. Unlike the agreements in *Rent-A-Center*, *Danley*, and *Clough*, the 2008 Agreement does not explicitly delegate the question of arbitrability to the arbitrator. It does, however, clearly state that the AAA will conduct any arbitration.

30

### c.   *Awuah v. Coverall North America, Inc.*

The First Circuit ruled that an agreement to arbitrate under the AAA's rules is "clear and unmistakable" evidence of the parties' intent for the arbitrator to decide issues of arbitrability.  In *Awuah*, the First Circuit decided that a district court erred in concluding that an arbitration clause did not "clearly and unmistakably" reflect an intention to delegate arbitrability to an arbitrator.  554 F.3d at 9.  The arbitration agreement in *Awuah* provided:

> unless otherwise provided or the parties agree otherwise, arbitration shall be in accordance with the then current Rules of the American Arbitration Association.

*Id.* at 9.  The First Circuit examined AAA Rule 7(a) which states that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."  *Id.*; *AAA Rule 7(a)*.  The *Awuah* Court commented that the language of Rule 7(a) "is about as 'clear and unmistakable' as language can get . . .."  *Id.* at 11.[7]

Other courts agree.  *See Richardson v. Coverall North America, Inc.*, 811 F. App'x 100, 103-04 (3d Cir. 2020) (agreeing with the *Awuah* court that Rule 7(a) "is about as 'clear and unmistakable' as language can get"); *Oracle Am., Inc. v. Myriad Group A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013) ("Virtually every circuit to have

---

[7]      The Court in *Awuah* found that the parties "clearly and unmistakably" agreed an arbitrator should decide arbitrability but ultimately directed the district court to determine the question of whether the remedy of arbitration was illusory due to high costs.  *Awuah*, 554 F.3d at 13.  While Mr. McKenzie and the Maine Attorney General complain about the cost of arbitration, they do not advance the argument that arbitration is so prohibitively expensive as to make the remedy illusory.

considered the issue has determined that incorporation of the [AAA's] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability"); *Van Curan v. Great Falls Ins. Co.*, No. 2:12-cv-047-NT, 2012 U.S. Dist. LEXIS 104143, 2012 WL 3115160, at *2, 4 (D. Me. July 26, 2012) (concluding that under an agreement to submit disputes "to the [AAA] in accordance with the [AAA's] National Rules for the Resolution of Employment Disputes" "the Court must conclude that the parties intended that questions of the scope of the Arbitration Clause be referred to the arbitrator").

If the 2008 Agreement expressly incorporated the AAA Rules as in *Awuah*, then this Court would be bound to apply *Awuah* and conclude that Rule 7(a) "clearly and unmistakably" delegates arbitrability to the AAA arbitrators. The issue narrows to whether by agreeing to "arbitration through the American Arbitration Association" without specifically mentioning or incorporating the AAA rules, the parties agreed to incorporate the AAA rules.

### d.   Beyond *Awuah*

The precise issue in this case is the next case just beyond *Awuah* where the AAA is mentioned, but not its rules. The Court concludes, however, that by agreeing to arbitrate through the AAA, the parties agreed to the AAA's rules. The Court first finds support in the AAA rules themselves. Rule 1(a) of the American Arbitration Association's Commercial Arbitration Rules provides: "The parties shall be deemed to have made these rules a part of their arbitration agreement whenever they have provided for arbitration by the [AAA] under its Commercial Arbitration Rules *or for*

*arbitration by the AAA of a domestic commercial dispute without specifying particular rules.*" AAA Rule 1(a) (emphasis added).  While the parties have not explicitly spelled out the AAA's Commercial Arbitration Rules in the arbitration clause, the dispute here is a domestic commercial dispute and the parties have provided for arbitration by the AAA.  Thus, the Court concludes that by agreeing to arbitrate through the AAA, the parties have agreed to incorporate the AAA rules.

The Court finds further support from other circuits faced with the same issue. *See Int'l Broth. of Elec. Workers, Local Union 824 v. Verizon Florida, LLC*, 803 F.3d 1241, 1248 (11th Cir. 2015) (concluding that a AAA rule "was incorporated into the [agreement] by virtue of the parties' agreement to submit to AAA arbitration"); *Idea Nuova, Inc. v. GM Licensing Group, Inc.*, 617 F.3d 177, 181 (2d Cir. 2010) (citing Rule 1(a) and concluding that "when, as here, parties expressly agree to submit their commercial disputes 'to AAA arbitration for resolution,' such language is reasonably understood, without more, to agree to arbitration pursuant to AAA rules and to the incorporation of those rules into the parties' agreement"); *P & P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 867 (10th Cir. 1999) (holding that "the parties' arbitration clause, which mandates that any disputes shall be arbitrated 'before the American Arbitration Association' indicates an agreement that the parties be bound by the procedural rules of the AAA"); *Law Offices of Joseph L. Manson III v. Keiko Aoki*, No. 19-cv-04392-LTS-GWG, 2020 WL 767466, at *4, 2020 U.S. Dist. LEXIS 1768 (S.D.N.Y. Jan. 3, 2020) (concluding that an arbitration clause invoked the AAA rules "by specifying that disputes arising under the Agreement must be arbitrated 'under

the auspices of the American Arbitration Association'"); *Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartner, Inc.*, 203 F.R.D. 677, 684-85 (S.D. Fla. 2001) ("[B]y designating the AAA in the Agreement to arbitrate any dispute and not designating any alternate set of procedural rules or expressing any limitation on the applicability of [AAA] Rule 1, which was in effect at the time of the Agreement, the parties contracted via a theory of incorporation that the Rules of the AAA would govern arbitration matters").

In *Idea Nuova,* the Second Circuit made short work of the argument AAA rules did "not apply to this case because the Agreement at issue consents to AAA arbitration without referencing AAA rules." 617 F.3d at 181. The Second Circuit minced no words:

> The argument is disingenuous. AAA arbitration is arbitration conducted according to AAA rules. . . We thus conclude that when, as here, parties expressly agree to submit their commercial disputes "to AAA arbitration for resolution," . . . such language is reasonably understood, without more, to agree to arbitration pursuant to AAA rules and to the incorporation of those rules into the parties' agreement.

*Id.*

### e.      Countervailing Authority

While not cited by the parties, some courts have declined to delegate arbitrability when the agreement was insufficiently clear. In *Shivkov v. Artex Risk Solutions, Inc.*, No. 19-16746, 2020 U.S. App. LEXIS 28522, 2020 WL 5405687 (9th Cir. Sept. 9, 2020), the Ninth Circuit affirmed a district court's refusal to compel arbitration. The arbitration clause in *Shivkov* read:

> You and we agree that in the event of any dispute that cannot be resolved between the parties, that we will agree to seek to resolve such disputes through mediation in Mesa, Arizona, and if that fails, that all disputes will be subject to binding arbitration in Mesa, Arizona, with arbitrators to be agreed upon by the parties, and if no agreement is reached, then arbitrated by the American Arbitration Association (AAA).

*Id.* at *3. The Ninth Circuit noted that the question of arbitrability "touches on a circuit split on whether incorporation of the AAA Rules is sufficient evidence that the parties clearly and unmistakably delegated the issue of class arbitration to the arbitrator." *Id.* at *12. In *Shivkov*, the Ninth Circuit discussed a prior Ninth Circuit case, *Brennan v. Opus Bank*, 796 F.3d 1125 (9th Cir. 2015), which ruled that "incorporation of the AAA Rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." The *Shivkov* Court distinguished *Brennan* because the arbitration clause in *Shivkov*, like the arbitration clause here, did not specifically refer to the AAA rules. *Id.* (citing *Brennan*, 796 F.3d at 1128). The Circuit Court rejected the plaintiffs' argument that the "obvious and unavoidable implication of an agreement to arbitrate before the AAA is an agreement to submit to the AAA's arbitration rules," stating that "we have never held that a mere reference to the AAA shows clear and unmistakable intent to delegate a gateway issue to an arbitrator . . . ." *Id.* Because the arbitration clause listed AAA resolution as the third of three options for dispute resolution, the Circuit Court declined to find "clear and unmistakable evidence that the parties intended to delegate the gateway issue of class arbitration to the arbitrator by virtue of the AAA Rules . . . ." *Id.* *See also Chesapeake Appalachia, LLC v. Scout Petroleum, LLC*, 809

F.3d 746, 761 (3d Cir. 2016) (declining to incorporate the AAA Rules for class arbitration because to do so would require "a daisy-chain of cross-references" from the arbitration agreement, to the AAA Rules, to the Commercial AAA Rules, to AAA Supplementary Rules). The Court reads both *Shivkov* and *Chesapeake Appalachia* as providing some support for Mr. McKenzie's position here.

Even so, on balance, the Court is not convinced that the Ninth and Third Circuit caselaw tips the analysis in Mr. McKenzie's favor. First, *Shivkov* and *Chesapeake Appalachia* are class action cases and "[t]he differences between class and bilateral arbitration are substantial." *JPay, Inc. v. Kobel*, 904 F.3d 923, 935-36 (11th Cir. 2018). To this point, the *Shivkov* Court acknowledged that "the structural features of class arbitration make it a 'fundamental' change from the norm of bilateral arbitration." *Shivkov*, 2020 WL 5405687, at *10 (citing *Herrington v. Waterstone Mortg. Corp.*, 907 F.3d 502, 509 (7th Cir. 2018)).

Furthermore, as quoted above, the *Shivkov* alternative resolution clause presented arbitration as the fourth and last alternative after (1) attempted resolution by the parties, (2) mediation, (3) binding arbitration with the parties to agree on the arbitrators, and (4) only if these first three alternatives fail, arbitration by the AAA. *Shivkov*, 2020 WL 5405687, at *3. Unlike *Shivkov*, the arbitration clause here is very clear that "[a]ny disputes will be settled by arbitration through the American Arbitration Association," and AAA arbitration was not the last resort. *2008 Agreement* at 6.

The *Chesapeake Appalachia* Court was influenced by the fact that the arbitration clause in that class action case did not refer to class action arbitration. *Chesapeake Appalachia*, 809 F.3d at 758.  In addition, the language in the leases in question seemed directed toward bilateral, not class arbitration.  *Id.* at 760.  Indeed, the Third Circuit conceded that "[v]irtually every circuit to have considered the issue has determined that incorporation of the [AAA] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."  *Id.* at 763-64 (collecting cases).  The Third Circuit commented that this "'bilateral arbitration dispute case law' is entitled to relatively little weight in the class arbitrability context."  *Id.* at 764.

Finally, the Court turns to *Biller v. S-H OpCo Greenwich Bay Manor, LLC*, a First Circuit case Mr. McKenzie relies upon in support of his position.  In the Court's view, *Biller* does not change this result.  In *Biller*, the Court decided that it, not the arbitrator should decide the gateway question of arbitrability.  961 F.3d at 509-10.  The First Circuit ruled that the arbitration clause did not supply "clear and unmistakable evidence that the parties agreed to have an arbitrator decide whether to arbitrate their disputes . . .."  *Id.*[8]  The *Biller* Court distinguished the case from *Awuah* because unlike the arbitration clause in *Awuah*, the *Biller* arbitration provision did not refer to the AAA or incorporate any rules delegating threshold

---

[8]     The court in *Biller* ultimately decided that the dispute should be arbitrated but went on to consider the plaintiffs' unconscionability argument, finding that unconscionability "is for the courts to resolve, because under the FAA, an arbitration agreement may still 'be invalidated by "generally applicable contract defenses, such as fraud, duress, or unconscionability."'"  *Biller*, 961 F.3d at 516 (quoting *Rent-A-Center*, 561 U.S. at 68).  The parties do not argue that the 2008 Agreement was a product of fraud, duress, or unconscionability.

arbitrability to the arbitrator.[9]  Thus, unlike the present case, the *Biller* arbitration clause did not refer to the AAA specifically.  As previously explained, by agreeing to arbitrate through the AAA, Mr. McKenzie and the Estate incorporated the AAA rules, and under *Awuah*, Rule 7(a) satisfies the "clear and unmistakable" standard.  In short, the Court concludes that the authority in favor of the arbitrator determining arbitrability is more persuasive than the authority in favor of a court doing so, where the arbitration clause expressly refers to the AAA, but not to its rules.

### f.  The Viability of the 2008 Agreement

The Court need not resolve how, in the alternative, it would decide the issue of arbitrability, but to the extent that Mr. McKenzie argues that the 2008 Agreement terminated, the Court agrees with the First Circuit in *Biller*.  After concluding that it should decide arbitrability, the *Biller* Court held that "when someone argues . . . that a broad arbitration clause is invalid or unenforceable only 'on a ground that directly affects the entire agreement' that challenge is ordinarily for the arbitrator to decide."  *Id.* at 512-13 (quoting *Rent-A-Center*, 561 U.S. at 70-71).  Even assuming

---

[9]    The arbitration clause in *Biller* read:

> Any and all claims or controversies arising out of, or in any way relating to, this Agreement or any of your stays at the Community, excluding any action for involuntary transfer or discharge or eviction, and including disputes regarding interpretation, scope, enforceability, unconscionability, waiver, preemption and/or violability of this Agreement, whether arising out of State or Federal law, whether existing or arising in the future, whether for statutory, compensatory or punitive damages and whether sounding in breach of contract, tort or breach of statutory duties, irrespective of the basis for the duty or the legal theories upon which the claim is asserted, shall be submitted to binding arbitration, as provided below, and shall not be filed in a court of law **The parties to this Agreement further understand that a judge and/or jury will <u>not</u> decide their case**

961 F.3d at 506 (bold lettering in original opinion).

that the underlying agreement terminated or was rightfully rescinded, "that would not mean [the parties'] duties to arbitrate their contract-related disputes ended, too." *Id.* Accordingly, to the extent Mr. McKenzie argues that the 2008 Agreement terminated and is no longer valid, the Court concludes that the arbitration clause would still be effective.

Mr. McKenzie argues, however, that the 2008 Agreement was not simply "terminated" but was completely replaced by the Mediation Term Sheet which he contends "clearly and undeniably extinguished the [2008] Agreement, including its provision to arbitrate . . .." *McKenzie's Opp'n to Estate's Mot. to Compel Arbitration* at 9. In the context of a "replacement contract," *Biller* held that "a claim that two parties later agreed to extinguish their arbitration pledge (specifically) is for the courts to decide." *Biller*, 961 F.3d at 514. "Under New York law, '[i]t is well established that a subsequent contract regarding the same matter will supersede the prior contract.'" *Applied Energetics, Inc. v. NewOak Capital Markets, LLC*, 645 F.3d 522, 526 (2d Cir. 2011) (quoting *Barnum v. Millbrook Care Ltd. P'ship*, 850 F. Supp. 1227, 1236 (S.D.N.Y. 1994)). The Estate and the Maine Attorney General, however, argue that the subsequent Mediation Term Sheet is unenforceable, and thus the underlying 2008 Agreement's arbitration clause is still intact. *Estate's Reply to Maine Attorney General's Resp. to Mot. to Compel Arbitration* at 5-6.

These conflicting arguments present the Court with a conundrum: if the Mediation Term Sheet is enforceable, then it is arguably a replacement contract that supersedes the 2008 Agreement and precludes arbitration; if the Mediation Term

Sheet is not enforceable, then the 2008 Agreement and its arbitration clause are completely intact.  The problem is that to reach the merits of this issue, the Court would first have to conclude that the issue is not arbitrable and the Court just ruled that the AAA, not this Court, must resolve the gateway issue of arbitrability.  Based on its conclusion that the AAA Panel should decide arbitrability, the Court declines to issue an advisory opinion on an eventuality that may not occur.

### 2.    The Court Stays this Proceeding

In its motion, the Estate asks the Court to stay this proceeding under 9 U.S.C. § 3 and § 4 pending a decision by the AAA Panel regarding the arbitrability of Mr. McKenzie's claims.  *Estate's Mot. to Compel Arbitration* at 10.  Mr. McKenzie urges the Court to deny the motion to stay on the ground that the issue he has presented the Court is not arbitrable.  *McKenzie's Opp'n to Estate's Mot. to Compel Arbitration* at 11.  The Maine Attorney General also urges the Court to deny the motion to stay because in his view the Court, not the AAA Panel, should decide the question of the enforceability of the "Binding Term Sheet."  *Maine Attorney General's Resp. to Estate's Mot. to Compel Arbitration* at 4-5.

The FAA grants the Court to authority to stay a lawsuit until the completion of the arbitration.  9 U.S.C. § 3 ("If any suit . . . upon any issue referable to arbitration under an agreement in writing for such arbitration, the court . . . upon being satisfied that the issue involved in such suit . . . is referable to arbitration . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had . . .").  "Under these circumstances, 'the mandatory term "shall"' in this

provision 'creates an obligation impervious to judicial discretion' that the court stay the proceedings." *Café Indigo, LLC v. Pearl River Pastry, LLC*, No. 20-cv-419-JL, 2020 U.S. Dist. LEXIS 153794, at *26 (D.N.H. Aug. 25, 2020) (quoting *Katz v. Cellco P'ship*, 794 F.3d 341, 345 (2d Cir. 2015) (quoting *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998)). The First Circuit Court of Appeals has held that under circumstances such as this, "where one side is entitled to arbitration of a claim brought in court, . . . a district court can, in its discretion, choose to dismiss the law suit, if all claims asserted in the case are found arbitrable." *Café Indigo*, 2020 U.S. Dist. LEXIS 153794, at *26 (quoting *Next Step Med. Co., Inc. v. Johnson & Johnson Int'l*, 619 F.3d 67, 71 (1st Cir. 2010)).

Based on this statutory and judicial guidance, the Court concludes that the more sensible way to proceed is to stay this proceeding until the AAA Panel decides the issue of arbitrability. If the AAA Panel finds the dispute is not arbitrable, the Court will proceed with this case to resolve the issue of the enforceability of the Mediation Term Sheet. If, however, the AAA Panel determines that the dispute is arbitrable and proceeds to the merits, the Court will likely dismiss the case without prejudice since "all claims asserted in the case" will have been found arbitrable. *Next Step*, 619 F.3d at 71.

The Court expects that the AAA Panel will efficiently resolve the arbitrability question. The New York Arbitration has been ongoing since June 2019 and the AAA Panel is familiar with the parties and the dispute. The issue here regarding the Mediation Term Sheet is the latest skirmish in this protracted litigation now before

the AAA, and the Court assumes that the AAA Panel is fully capable of quickly deciding whether this dispute belongs before it.  As the Court must depend upon the parties to inform it when the AAA Panel decides the arbitrability issue, the Court orders the parties to inform the Court immediately upon their receipt of notice of the AAA Panel decision on arbitrability and to keep its finger on the pulse of the case, the Court further requires counsel to provide periodic reports about the status of the arbitration.

### B.      Motion for Preliminary Injunction

"A district court faced with a motion for a preliminary injunction must weigh four factors: (1) the plaintiff's likelihood of success on the merits; (2) the potential for irreparable harm in the absence of an injunction; (3) whether issuing an injunction will burden the defendants less than denying an injunction would burden the plaintiffs; and (4) the effect, if any, on the public interest."  *Swarovski Aktiengesellschaft v. Building No. 19, Inc.*, 704 F.3d 44, 48 (1st Cir. 2013) (internal citations omitted).  Mr. McKenzie makes the case that all four factors weigh towards granting his motion and enjoining the New York Arbitration, and he requests oral argument on the matter.  *McKenzie's Mot. for Prelim. Inj.* at 20.

The Court has resolved that the AAA Panel in the New York Arbitration should decide questions of arbitrability and has stayed this proceeding pending the AAA Panel's decision on arbitrability.  Having compelled arbitration, the Court concludes that the issue of preliminary injunction is now moot.  *See The O.N. Equity Sales Co. v. Thiers*, 590 F. Supp. 2d 1208, 1213 (D. Ariz. 2008) (granting motion to compel

arbitration and concluding that the motion for preliminary injunction is therefore moot). The Court further concludes that oral argument would not be helpful and would only delay the disposition of this case. The Court dismisses the motion for preliminary injunction without prejudice so that Mr. McKenzie may reinitiate it if the AAA Panel determines the arbitrability issue in his favor and the matter returns to this Court for further proceedings.

## V.   CONCLUSION

The Court GRANTS the Estate's Motion to Compel Arbitration (ECF No. 15) and DISMISSES without prejudice Michael McKenzie's Motion for Preliminary Injunction and DENIES the Request for Oral Argument (ECF No. 23).[10] The Court STAYS this action and ORDERS counsel to notify the Court immediately upon receipt of the AAA Panel's arbitrability decision and, if the decision is not made by January 18, 2021, to prepare and file a joint status report by no later than January 18, 2021 and every ninety days thereafter until the AAA Panel rules on the issue of arbitrability.

SO ORDERED.

/s/ John A. Woodcock, Jr.
JOHN A. WOODCOCK, JR.
UNITED STATES DISTRICT JUDGE

Dated this 19th day of October, 2020

---

[10]   As is apparent from this opinion, by granting the motion to compel arbitration, the Court expresses no view as to whether an arbitrator should or should not conclude that the claims are arbitrable and does not reach the merits as to whether the Mediation Term Sheet is enforceable.