## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| MICHAEL MCKENZIE, individually, and d/b/a American Image Art, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 2:20-cv-00262-JAW |
| JAMES W. BRANNAN, as Personal Representative of the Estate of Robert Indiana, | ) ) ) ) ) | |
| and | ) ) | |
| AARON M. FREY, in his official capacity as Attorney General of the State of Maine, | ) ) ) ) | |
| Defendants. | ) ) | |

## ORDER ON MOTION TO SEAL

The Court denies a motion to seal a negotiation outline from a mediation concluding that the mediation outline is a judicial record with a presumption of public access submitted to the Court for its substantive consideration on pending motions and there are no compelling reasons to seal the document.

## I.     BACKGROUND

This case involves a long-running legal battle between an art publisher, Michael McKenzie, and the personal representative of the estate of artist Robert Indiana (the Estate) over the rights to publish Mr. Indiana's artwork.  Mr. McKenzie sued the Estate in the District of Maine, seeking to enforce a mediation agreement

signed by Mr. McKenzie and the Estate in Portland, Maine in November 2019. Pursuant to 5 M.R.S. § 194, the Maine Attorney General, Aaron M. Frey, was named as a defendant in his official capacity to represent the interests of the Star of Hope, Inc. (Star of Hope), a Maine nonprofit corporation and the beneficiary of Mr. Indiana's entire estate. The Court explained the history and details of the dispute in its October 19, 2020 Order on the Estate's motion to compel arbitration and Mr. McKenzie's motion for preliminary injunction. *See Order on Mots. to Compel Arbitration and Stay Proceedings and Prelim. Inj.* at 2-12 (ECF No. 56).

On September 23, 2020, the Maine Attorney General responded in opposition to Mr. McKenzie's motion for preliminary injunction and argued that "[t]he public interest cannot be served by enforcing terms of a long-term contract to which a charity will [be] bound when it had no input into the terms and believes they are against its best interest." *Def. Attorney General's Opp'n to Pl.'s Mot. for Prelim. Inj.* at 5 (ECF No. 46). In further support, the Maine Attorney General attached a declaration from Lawrence Sterrs, Chairman of the Board of Directors of the Star of Hope, which stated "[n]either I nor the counsel for Star of Hope were present, invited to attend, or consulted in the negotiation of the term sheet between the Estate and Michael McKenzie." *Id.*, Attach. 1, *Decl. of Lawrence J. Sterrs* ¶¶ 1, 4.

In response to Mr. Sterrs' sworn declaration, on September 25, 2020, the Estate moved for leave to file a supplemental declaration signed by Edward P. Boyle, the attorney for the Estate. *Def. James W. Brannan's Mot. for Leave to File Suppl. Decl. in Resp. to the Opp'n Filed by Def. Aaron M. Frey to Pl. Michael McKenzie's Mot. for*

2

*Prelim. Inj.*, Attach 1., *Decl. of Edward P. Boyle* at 1 (ECF No. 50). Attorney Boyle's sworn declaration stated that Mr. Sterrs "saw the Estate's proposed settlement term sheet to [Mr.] McKenzie before it was given to [Mr.] McKenzie." *Id.* at 1.

On September 29, 2020, the Maine Attorney General responded with a declaration sworn to by Seth Brewster, an attorney for the Star of Hope. *Def. Attorney General's Opp'n to Estate's Mot. for Leave to File a Suppl. Decl.*, Attach. 1, *Decl. of Seth W. Brewster* (ECF No. 52) (*Brewster Decl.*). Attorney Brewster's sworn declaration stated that the Star of Hope was not involved in the negotiations and was only shown a mediation outline, which contained "vast and material differences" from the agreed-to mediation term sheet. *Id.* On September 30, 2020, the Court granted the Estate's motion for leave to file a supplemental declaration. *Order* (ECF No. 54).

On September 30, 2020, the Maine Attorney General filed an unopposed motion to seal Exhibit 1 of the Brewster Declaration. *Def. Attorney General's Mot. to Seal Ex. 1 to Brewster Decl.* (ECF No. 55) (*Mot. to Seal*). Exhibit 1 is a four-page document from the November 2019 mediation entitled "Confidential Mediation Settlement Outlines." *Def. Attorney General's Opp'n to Estate's Mot. for Leave to File a Suppl. Decl.*, Attach. 2, *Confidential Mediation Settlement Outlines* (ECF No. 52) (*Mediation Outline*). According to the Maine Attorney General, the Mediation Outline contains "an outline of some elements that may be part of any possible agreements between the Estate and [Mr.] McKenzie, Morgan Art and Jamie Thomas that the Estate prepared in advance of the mediation." *Brewster Decl.* ¶ 9. Each page

of the Mediation Outline bears the following designation in the top-right corner of the page:

**\*\*FOR MEDIATOR'S EYES ONLY\*\***
**Confidential Settlement Communication**
**Subject to Fed. R. Evid. 408**

*Mediation Outline* at 2-5.

## II.   THE COURT'S INTERIM ORDER

On October 23, 2020, the Court issued an interim order on the Maine Attorney General's motion to seal.  *Interim Order on Mot. to Seal* (ECF No. 57) (*Interim Order*). The Court noted that while neither Mr. McKenzie nor the Estate opposed the motion to seal, the Mediation Outline appeared to be a judicial record that carries a strong presumption of public access.  *Id.* at 4.  The Court was troubled that the Maine Attorney General did not seem to have consulted any applicable law in his motion. *Id.* at 6.  The Court concluded that "[b]ased on its understanding of *Kravetz*, the Court is concerned that granting the relief requested in the Maine Attorney General's unopposed motion would be contrary to First Circuit authority."  *Id.* at 7.  Therefore, the Court ordered the parties, including the Maine Attorney General, the Estate, and Mr. McKenzie, "to file with the Court a memorandum within ten days of the date of this Order, addressing First Circuit authority on the issue of sealing the Mediation Outline."  *Id.* at 7-8.

On October 29, 2020, Mr. McKenzie filed his memorandum.  *Pl. Michael McKenzie's Mem. Regarding Sealing the Estate's Mediation Outline as Ordered by the Interim Order on Mot. to Seal (ECF 57)* at 2 (ECF No. 58) (*McKenzie's Resp.*).  On

November 2, 2020, the Maine Attorney General and the Estate each filed their own memorandum. *Def. Attorney General's Mem. Regarding Sealing the Estate's Mediation Outline as Ordered by the Interim Order on Mot. to Seal (ECF 57)* (ECF No. 59) (*Maine Attorney General's Resp.*); *Mem. of Estate of Robert Indiana in Supp. of Mot. for Seal* (ECF No. 60) (*Estate's Resp.*).

## III.   THE PARTIES' POSITIONS

### A.   Michael McKenzie

Mr. McKenzie states that "[u]pon review of this Court's Interim Order (ECF 57) and the First Circuit authority therein, [Mr. McKenzie] now submits that the Mediation Outline should not be sealed but remain on the public docket." *McKenzie's Resp.* at 2.  Citing First Circuit law, Mr. McKenzie contends that the Mediation Outline "was submitted as part of the briefing on [Mr.] McKenzie's Motion for Preliminary Injunction and considered by the Court on that matter and related motions." *Id.*  The Court has since granted the Estate's motion to compel arbitration and stay this action and dismissed Mr. McKenzie's motion for preliminary injunction without prejudice, but the Court has not decided the merits of the motion for preliminary injunction and if the arbitration panel in New York returns the dispute to this Court, the mediation negotiations will be relevant to the enforceability of the mediation settlement agreement and should not be sealed from the public.  *Id.* at 2-3. Mr. McKenzie is "not aware of any compelling reasons or particular interest of the Estate (who requested to seal the Mediation Outline) that justify sealing the exhibit from the public," and he contends the entire matter is of public interest because it

involves a local public charity, the Star of Hope, which could possibly have a very impactful benefit to the community of Vinalhaven, Maine. *Id.* at 3.

### B.     The Maine Attorney General

The Maine Attorney General, who originally filed the motion to seal, now states that he "neither supports nor objects to the sealing of the Mediation Outline." *Maine Attorney General's Resp.* at 2. He argues that the Mediation Outline is "relevant to [his] assertion that the sole beneficiary of the Estate (Star of Hope, Inc.) had no input into the terms of the Binding Term Sheet that is the subject of this litigation and thus enforcing the term sheet would be against the public interest." *Id.* at 3. He concludes that "[s]ince the document at issue is the Estate's document, and the Attorney General moved for the document to be sealed at the Estate's request, the Attorney General leaves it to the Estate to submit a 'factual demonstration of potential harm' that will result from disclosure of the Mediation Outline." *Id.* "In the absence of such a demonstration," the Maine Attorney General argues the document should not be sealed. *Id.*

### C.     The Estate

Unlike Mr. McKenzie and the Maine Attorney General, the Estate argues that "[b]ecause the Mediation Outlines are improper and unnecessary filings—of no relevance to any issue properly before the court—and were prepared and provided subject to a confidentiality agreement, they may properly be sealed consistent with First Circuit precedent." *Estate's Resp.* at 1. The Estate agrees with the Court's analysis in the Interim Order that Federal Rule of Evidence 408 does not preclude

public disclosure of settlement materials but contends "that does not mean public disclosure is consistent with the judicial system's interest in encouraging the settlement of litigation." *Id.* at 3. The Estate claims the First Circuit has not specifically addressed "public access to draft settlement proposals" but argues the Mediation Outline is not relevant because it was "filed in connection with a tertiary dispute over whether Star of Hope was consulted in negotiations over the terms sheet, something that is neither here nor there for purposes of the merits of this case." *Id.* It further points out that filing the Mediation Outline was contrary to the parties' obligations in the Mediation Agreement to keep all proposals confidential. *Id.* (citing *id.*, Attach. 2, *Mediation Agreement & Rules*). It cites Second Circuit and Seventh Circuit law to support its proposition that there is a "negligible (if any) presumption of access." *Id.* at 3-5. Rather, the Estate claims "there is a countervailing interest in ensuring that parties to litigation may engage in settlement negotiations without the risk that another party will selectively disclose their positions for unimportant reasons." *Id.* at 5.

## IV.   DISCUSSION

The Court concludes that the Mediation Outline should not be sealed from the public because it is a judicial record with a presumption of public access and there are no compelling reasons to justify non-disclosure. In its Interim Order, the Court laid out the First Circuit's standard for a motion to seal. *See Interim Order* at 4-5. The Estate does not object but rather argues that the Mediation Outline is irrelevant because it has no "bearing on the disposition of any claims or motions before this

7

Court." *Estate Resp.* at 2.  The Estate points out that the Court did not reference the Mediation Outline in its order granting the Estate's motion to compel arbitration and denying Mr. McKenzie's motion for preliminary injunction.  *See id.* (citing *Order on Mots. to Compel Arbitration and Stay Proceedings and Prelim. Inj.* (ECF No. 56)).

### A.     Judicial Records Under First Circuit Precedent

The Estate misinterprets the First Circuit's standard.  As the Court explained in its Interim Order, the common law right of access applies to documents that constitute "judicial records," which are defined as "materials on which a court relies in determining the litigants' substantive rights."  *United States v. Kravetz*, 706 F.3d 47, 54 (1st Cir. 2013) (quoting *In re Providence Journal Co., Inc.*, 293 F.3d 1, 9-10 (1st Cir. 2002)).  Here, the Estate argues that the Mediation Outline is not a judicial record because the Court should not consider it, even though the Attorney General filed it for the Court's consideration.  The problem with this contention is that, relying on *Federal Trade Commission v. Standard Financial Management Corp.*, 830 F.2d 404 (1st Cir. 1987), the *Kravetz* Court rejected a similar argument.

In *Kravetz*, the First Circuit addressed among other things whether support letters submitted by a defendant at a sentencing hearing were judicial documents. 706 F.3d at 57-59.  One of the defendant's arguments was that the letters should not be made public unless it was established that they affected the sentence.  *Id.* at 58. The First Circuit in *Kravetz* explicitly rejected the argument that documents should not be considered judicial documents when "it is unclear whether the court relied upon them" because to do so would "place us in the position of attempting to divine

8

and dissect the exact thought processes of judges . . . ." *Id.* at 58 (quoting *Fed. Trade Comm'n v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 409 (1st Cir. 1987)).  Instead, the Court held "that relevant documents which are submitted to, and accepted by, a court of competent jurisdiction in the course of adjudicatory proceedings, become documents to which the presumption of access applies." *Id.* (quoting *Standard Fin. Mgmt.*, 830 F.2d at 409).

The Maine Attorney General submitted the Mediation Outline in support of his opposition to the Estate's motion for leave to file a supplemental declaration and for determination of the "public interest" prong of the preliminary injunction analysis. It is irrelevant whether the Court actually relied on the Mediation Outline in its decision or may do so in the future.  Just as the defendant in *Kravetz* filed support letters to influence a judicial decision, the Maine Attorney General filed the Mediation Outline to influence the Court's ruling on the motion for preliminary injunction, thereby placing it within the meaning of a judicial record.[1]  That the Estate views a judicial record as immaterial does not make it so nor does it transform the document into something other than a judicial record.  The consequence of being a judicial record is that the document becomes subject to a presumption of public access.

---

[1]     A court could review a submitted document, determine it is wholly irrelevant to the legal issues before the Court, and, acting in its discretion, conclude it should be sealed, particularly if the document contains scandalous, prurient, protected or otherwise improper information.  But to the extent the Estate argues that the Mediation Outline falls so far outside the range of relevance that the Court should seal it, the Court disagrees with the Estate.

9

**B.   Settlement Documents as an Exception to the Right of Public Access**

The Estate has a fallback position.  It argues that even if the Mediation Outline is a judicial record, the Court should keep it under seal because it is a settlement document, which for public policy reasons is typically viewed as overcoming the presumption of public access.  *Estate's Resp.* at 3-5.

In the context of this case, the Estate's argument regarding the judicial system's interest in encouraging the settlement of litigation does not overcome the presumption of public access.  In 1978, the United States Supreme Court reiterated the right of public access in judicial records.  *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978).  The *Warner* Court gave examples of instances where the right of privacy exceeds the right of public access:

> For example, the common-law right of inspection has bowed before the power of a court to insure that its records are not "used to gratify private spite or promote public scandal" through the publication of "the painful and sometimes disgusting details of a divorce case." Similarly, courts have refused to permit their files to serve as reservoirs of libelous statements for press consumption, or as sources of business information that might harm a litigant's competitive standing.

*Id.* (citations omitted); *see Goesel v. Boley Int'l (H.K.) Ltd.*, 738 F.3d 831, 835 (7th Cir. 2013) (examples of matters meriting sealing include "terms that would reveal trade secrets or seriously compromise personal or institutional privacy or national security").  Here, the Estate has not suggested that there is anything about the content of the Mediation Outline that fits within these or similar categories.  The Estate has not argued that the contents of the Mediation Outline are scandalous,

libelous, sources of business information that would harm a litigant's competitive standing, or are subject to any analogous arguments. *Estate's Resp.* at 1-5.

Instead, the Estate seems to maintain that because the parties entered into the mediation with assurances of confidentiality, the Court is bound to enforce the secrecy provisions of their agreement. This is not correct. "An agreement by the existing parties is not itself a sufficient basis to violate the public's right to public access." *P.R. Land & Fruit, S.E. v. Municipio de Culebra*, Civil No. 09-2280 (ADC/BJM), 2019 U.S. Dist. LEXIS 143915, at *8 (D.P.R. July 23, 2019). Even if a court might honor the parties' agreement in a particular case, this is not that case.

Here Mr. McKenzie filed his lawsuit to enforce the alleged terms of a mediation agreement that he contends the parties entered into at the end of the November 25-26, 2019 mediation in Portland, Maine. *Compl.* ¶ 3. Thus, what happened at the mediation, who agreed to what, and whether the terms of the agreement are enforceable are critical to the resolution of the merits of the McKenzie lawsuit and the resolution of the motion for preliminary injunction that was before the Court.[2]

A further important issue, raised by the Maine Attorney General, is how the Court should address the interests of the Star of Hope, the charity that is the beneficiary of Mr. Indiana's estate. The Maine Attorney General argues that the Court should not enforce an agreement between two third parties, where the Star of

---

[2]      Depending on how the arbitration panel rules, the Court may never reach the merits of the motion for preliminary injunction and the lawsuit itself. *See Order on Mots. to Compel Arbitration and Stay Proceedings and Prelim. Inj.* (ECF No. 56). But the test for whether there is a presumption of right of public access to a filed document is not whether a court actually uses the document, but whether a relevant document was "submitted to, and accepted by, a court of competent jurisdiction in the course of adjudicatory proceedings" and, if so, the document becomes one "to which the presumption of access applies." *Kravetz*, 706 F.3d at 58.

Hope, the beneficiary of the Estate, did not participate in the mediation and was unaware of the terms of the mediation agreement.  To this point, whether the Star of Hope was present at the Portland mediation and was aware of the terms of the settlement are factual issues that underpin this part of the Maine Attorney General's position.  Contemporaneous memoranda, such as the Mediation Outline, that reflect what transpired at the mediation from the viewpoint of a participant would seem to be highly probative of what actually transpired, particularly since the author could not have known at the time that this litigation would ensue.

Thus, the Court concludes: (1) there is a presumption of public access, (2) there is nothing in the Mediation Outline that would justify its sealing because of its inappropriate or harmful content, and (3) the contents of the Mediation Outline are potentially highly probative to critical issues before the Court.  Whether to seal a filed-document rests generally in the discretion of the trial judge.  *See Warner Commc'ns*, 435 U.S. at 599 ("[T]he decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case"); *Siedle v. Putnam Invs., Inc.*, 147 F.3d 7, 10 (1st Cir. 1998) ("The trial court enjoys considerable leeway in making decisions of this sort").  Here, the Estate has presented scant reason for overcoming the presumption of public access and for the Court to exercise its discretion by sealing a presumptively public document.

### C.      Authority from Other Circuits

Having found no First Circuit authority on point, the Estate cites Second Circuit and Seventh Circuit caselaw.  The Estate's Second Circuit case, *United States v. Glens Falls Newspapers, Inc.*, 160 F.3d 853 (2d Cir. 1998), can be distinguished because that case involved a third-party newspaper requesting access to draft settlement documents that had not been submitted to the court for any substantive consideration.  The sought-after settlement documents were used merely to keep the judge apprised of the parties' independent progress toward settlement and were "not discussions or documents 'presented to the court to invoke its powers or affect its decisions.'"  *Id.* at 857 (quoting *United States v. Amodeo*, 71 F.3d 1044, 1050 (2d Cir. 1995)).  Here, however, the Mediation Outline was specifically presented to the Court for substantive consideration in its decisions.  Also, unlike *Glens Falls*, the Mediation Outline is not part of any ongoing settlement discussion where disclosure of the outline could affect that settlement.

For similar reasons, the Estate's *Goesel* case from the Seventh Circuit also fails to support its argument.  In *Goesel*, Judge Posner stated that "the presumption of a right of public access to court documents should apply" "when judicial approval of the terms is required, or they become an issue in a subsequent lawsuit, or the settlement is sought to be enforced."  *Goesel*, 738 F.3d at 834.  The Seventh Circuit went on to reject as "[o]bviously . . . insufficient" the movant's argument that a settlement agreement should be sealed merely because parties had a confidentiality agreement.  *Id.* at 835.  The *Goesel* decision actually favors the unsealing of the Mediation Outline

13

because the Outline fits squarely within Judge Posner's examples where sealing would be inappropriate, namely when the terms of the settlement "become an issue in a subsequent lawsuit, or the settlement is sought to be enforced." *Id.* at 834.

Again, contrary to the Estate's contention, the Mediation Outline is at issue in this case because the Maine Attorney General submitted it for consideration on the Estate's motion for leave to file a supplemental declaration and Mr. McKenzie's motion for preliminary injunction. Furthermore, an agreement between the parties to keep the mediation negotiations confidential is insufficient to seal the Mediation Outline.

### D.    Summary

Once the presumption of access applies, "'only the most compelling reasons can justify non-disclosure of judicial records' that come within the scope of the common-law right of access." *Kravetz*, 706 F.3d at 59 (quoting *In re Providence Journal*, 293 F.3d at 10 (quoting *Standard Fin. Mgmt.*, 830 F.2d at 410)). The Court concludes that given the strong presumption of public access that accompanies judicial documents, the mere fact that the Mediation Outline was part of a mediation negotiation is alone not compelling enough to outweigh the public's right to access.

### V.    CONCLUSION

The Court DENIES the Maine Attorney General's Motion to Seal Exhibit 1 to Brewster Declaration (ECF No. 55) and the Court ORDERS the Clerk to UNSEAL Attachment 2, Confidential Mediation Settlement Outlines, to the Defendant

Attorney General's Opposition to Estate's Motion for Leave to File a Supplemental

Declaration (ECF No. 52).

      SO ORDERED.

               /s/ John A. Woodcock, Jr.
               JOHN A. WOODCOCK, JR.
               UNITED STATES DISTRICT JUDGE

Dated this 12th day of November, 2020