**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | | |
|---|---|---|
| MICHAEL MCKENZIE, individually and doing business as AMERICAN IMAGE ART, an unincorporated dba,<br><br>Plaintiff,<br><br>v.<br><br>JAMES W. BRANNAN, as personal representative of THE ESTATE OF ROBERT INDIANA, and AARON M. FREY, only in his official capacity as Attorney General of the State of Maine<br><br>Defendants. | ) | Civil Action No.: 2:20-cv-00262-NT |

**DEFENDANT ATTORNEY GENERAL'S PRETRIAL BRIEF**

Pursuant to Local Rule 16.4(b) and the Report of Final Pretrial Conference Order dated June 30, 2022 (Doc. 107), Defendant Aaron M. Frey in his capacity as Attorney General of the State of Maine ("Attorney General") hereby submits his pretrial memorandum or brief. The Attorney General joins in full the Procedural Background, Factual Statement, Statement of Law, and Statement of Issues of Personal Representative James W. Brannan. The Attorney General submits a supplemental Factual Statement and supplemental Statement of Law as follows:

**Supplemental Factual Statement**

The Star of Hope, Inc. ("Star of Hope"), a Maine charitable corporation and the sole beneficiary of the Estate of Robert Indiana ("Indiana Estate" or "Estate"), was established during Robert Indiana's lifetime for the purpose of promoting Mr. Indiana's artistic legacy. As the sole beneficiary of the Indiana Estate, the Star of Hope will succeed to any surviving contracts to which the Estate is a party when the Estate is closed.

Representatives of the Star of Hope in attendance at the mediation held in Portland, Maine, on November 25 and 26, 2019, at which the "Confidential and Binding Term Sheet" ("2019 Term Sheet") was executed had no meaningful opportunity for input. Certain terms of the 2019 Term Sheet, if given effect and implemented, would have a substantial deleterious effect on the Star of Hope, particularly the requirement that the Estate will provide an agreement of indemnification and defense of Michael McKenzie/American Image Art ("AIA") of any and all claims against Michael McKenzie/AIA by Morgan Art Foundation Limited ("Morgan Art") in *Morgan Art Foundation Limited v. Michael McKenzie, American Image Art, Jamie Thomas, and Robert Indiana*, Case No. 1:18-cv-4438-AT-BCM ("the SDNY Action"). The SDNY Action has been pending since 2018 and the SDNY court is currently considering Morgan Art's motion for sanctions (and judgment) for McKenzie's/AIA's discovery violations. A conservative estimate of that potential liability to the Star of Hope (if this Court determines that the 2019 Term Sheet is an enforceable agreement and that McKenzie did not repudiate that agreement) is in the millions and millions of dollars. That and other terms impose significant financial and administrative burdens on the fledgling charity, thereby impeding Star of Hope's ability to perform its intended charitable functions for the public's benefit. Furthermore, Mr. McKenzie's post-mediation conduct and communications following execution of the 2019 Term Sheet highlighted and reinforced the Star of Hope's concerns about the impact of the 2019 Term Sheet if it were implemented, which continue to this day.

**Statement of Law – Contracts Against Public Policy**

A contract is unenforceable "if it is illegal, contrary to public policy, or contravenes the positive legislation of the state." *State Farm Mut. Auto. Ins. Co. v. Koshy*, 2010 ME 44, ¶ 41, 995 A.2d 651, 665. In Maine, a contract is contrary to public policy "if it clearly appears to be in

violation of some well established rule of law, or that its tendency will be harmful to the interests of society" *Id.* at ¶ 42; (quoting *Court v. Kiesman,* 2004 ME 72, ¶ 11, 850 A.2d 330, 333). To determine whether a contract is contrary to public policy, the court will "balance the freedom of the parties to contract against the detriment to society that would result from enforcement of that contract." *State Farm*, 2010 ME 44, ¶ 42, 995 A.2d at 665.

Maine courts look to various sources, including statutes, rules, and case law, to determine whether a public policy exists. *See e.g., Court v. Kiesman,* 2004 ME 72, ¶ 13, 850 A.2d at 333 (contract violated public policy that was ascertained from Maine case law); *Snow v. Bernstein, Shur, Sawyer & Nelson, P.A.*, 2017 ME 239, ¶ 19, 176 A.3d 729, 737 (contract violated public policy that was ascertained from comment to Maine Rules of Professional Conduct and opinions of the Maine and American Bar Association Ethics Commissions); *Lehigh v. Pittston Co.*, 456 A.2d 355, 361 (Me. 1983) (contract violated public policy that was ascertained from decades-old agreements between city and federal government).

Contracts will be unenforceable if they violate public policies that were intended to protect the interests of third parties who were not directly engaged in the formation of the contracts at issue. *See Riemann v Toland*, 2022 ME 13, ¶ 41, 269 A.3d 229, 241 *(*"when the best interest of a child is at issue, the freedom to contract does not outweigh the detriment that could result from enforcement of a premarital agreement's provision waiving attorney fees"); *Court*, 2004 ME at 72, ¶ 13, 850 A.2d at 333 (contract between parents that was intended to circumvent the child support modification process violated public policy intended to protect the best interests of the child); *Lehigh*, 456 A.2d at 361 (contract between city and private party for sale of municipal airport violated public policy intended to protect the interests of the public for whose use and benefit the airport had been expressly dedicated).

Well-established Maine law reveals a strong public policy in favor of protecting charitable assets and charitable beneficiaries, enforceable by the Attorney General. This policy is found in statute: "[t]he Attorney General shall enforce due application of funds given or appropriated to public charities within the State and prevent breaches of trust in the administration of public charities," 5 M.R.S.A. § 194(2), as well as common law. *See Fitzgerald v. Baxter State Park Authority*, 385 A.2d 189, 194 (Me. 1978). The Attorney General's role in protecting charitable funds is based on "long-established law, coming down from at least as early as Elizabethan England, that the community has an interest in the enforcement of charitable trusts and the Attorney General represents the community in seeing that the trusts are properly performed." *Id.* (quotation marks omitted).

AARON M. FREY
ATTORNEY GENERAL OF THE
STATE OF MAINE

DATED: July 11, 2022

/s/ Christina M. Moylan
Christina M. Moylan
Assistant Attorney General
Office of the Attorney General
6 State House Station
Augusta, ME 04333-0006
Tel. (207) 626-8800
christina.moylan@maine.gov

Counsel for Attorney General Aaron M. Frey

**CERTIFICATE OF SERVICE**

I hereby certify that on July 11, 2022, I electronically filed Defendant Attorney General's Pretrial Brief using the CM/ECF system, which will send notification of such filing(s) to all counsel of record.

/s/ Christina M. Moylan
Christina M. Moylan