IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MICHAEL MCKENZIE, individually and doing business as AMERICAN IMAGE ART, an unincorporated dba,<br><br>Plaintiff,<br><br>v.<br><br>JAMES W. BRANNAN, as personal representative of THE ESTATE OF ROBERT INDIANA, and AARON M. FREY, only in his official capacity as Attorney General of the State of Maine,<br><br>Defendants. | CIVIL NO. 2:20-cv-00262-NT |

**PLAINTIFF'S RESPONSE TO MOTIONS *IN LIMINE*
OF DEFENDANT BRANNAN ON BEHALF OF
THE ESTATE OF ROBERT INDIANA**

Plaintiff Michael McKenzie submits this response to the three motions *in limine* (ECF 118, 119, 120) filed by Defendant James Brannan as personal representative of the Estate of Robert Indiana (herein the "Estate") as well as the responses of the Attorney General that support and agree with the Estate (ECF 122, 123, 124).

McKenzie respectfully requests that the Court reserve ruling on these motions for now because the Attorney General continues to remain vague as to what it intends to offer to claim that the contract entered between McKenzie and the Estate is against public policy and a breach of charitable trust that puts the Star of Hope at risk. Additionally, the Estate has asserted ten affirmative defenses and, though we requested them to identify and narrow those which they would be pursuing in advance of our pretrial filings, its counsel did not do so but stated that their defenses depend upon the Plaintiff's case and what goes into evidence and they are not prepared to eliminate any defenses before hearing the evidence. McKenzie may well need to offer

1

evidence to rebut both the Attorney General and the Estate which they both now are trying to exclude in advance.

1. **Motion *in Limine* to Exclude Evidence About Morgan Art Foundation (ECF 118)**

    **(a) No Dispute on the Issues Raised by the First Circuit**

    Plaintiff agrees with the Estate that nothing about the fraud and other misconduct of the Morgan Art Foundation is relevant to the issues raised by the First Circuit. However, those are not the only issues in this case now that the Attorney General ("AG") raised his challenges to the enforceability of the Binding Term Sheet and the Estate has asserted affirmative defenses that include waiver, unclean hands, and the doctrine of fraud. Before discussing those defenses and how they open the door to the evidence that the Estate seeks to exclude, we state a brief description of Morgan Art Foundation ("Morgan") and what we would offer to refute some of the AG's and Estate's defenses.

    **(b) Morgan's Fraud as Described by the Estate**

    Morgan is an art producer who for many years has produced and marketed part of Indiana's artwork, most notably the LOVE artwork. McKenzie marketed the HOPE artwork and certain other artwork for Indiana and during their time together, McKenzie made for Indiana over $10,000,000 on what they produced and McKenzie marketed. Under both the arrangements that Indiana had with Morgan and with McKenzie, they marketed Indiana's artwork then paid him a percentage from the proceeds.

    The lawsuit in New York started when Morgan filed its complaint alleging that both Indiana and McKenzie had been violating the rights it claims that Morgan has to exclusively produce certain artwork it alleges that Indiana and McKenzie were producing. McKenzie denies

any violations and when Indiana died shortly after the filing of that lawsuit by Morgan, the Estate took the place of the deceased Indiana.

In response, the Estate made counterclaims against Morgan alleging that Morgan had defrauded Indiana by not paying over most of the money it made on selling Indiana artwork. The allegations against Morgan by the Estate were quite detailed and quite serious. *See,* the Estate's Second Amended Counterclaim against Morgan filed in the New York action which is marked for identification as Objected-To Exhibit 104. It is quite detailed in what fraud the Estate contends that Morgan perpetrated.

**(c) The AG Defense to Which Morgan Evidence Relates**

The AG asserts defenses that McKenzie is not entitled to equitable relief under the circumstances of this case, the Term Sheet is contrary to public policy, and the Term Sheet is voidable as a breach of charitable trust because the existence of the sole charitable beneficiary is at risk. ECF 89. The Estate's also asserts affirmative defenses of unclean hands and fraud which it has not withdrawn. ECF 88. McKenzie sought information about the AG equitable relief defense in an interrogatory and the answer was as follows:

> 1. State why You contend that Plaintiff is not entitled to equitable relief under the circumstances of this case as You assert in Affirmative Defense 3 in Your Amended Answer.
>
> **ANSWER:** Subject to and without waiving the foregoing objections, the Attorney General answers as follows. Mr. McKenzie has unclean hands because he appears to have forged Indiana artwork. *He also has exploited Indiana Art for commercial purposes beyond his contractual rights*, using it to sell sausage and wine for his own commercial benefit. He has called into question the authenticity of Indiana art works which hurts the Indiana art market and reputation.

*See,* AG Interrogatory Answers, attached hereto as Exhibit A. (emphasis added)

> The AG answered Interrogatory No. 4, as follows:
>
> 4. State why You assert in your Affirmative Defense 4 in Your Amended Answer that the Term Sheet is unenforceable because it is contrary to public policy.

3

> **ANSWER**: Subject to and without waiving the foregoing objections, the Attorney General answers as follows. The legal basis for the claim is in 5 M.R.S. section 194 and the common law. The factual basis is set forth in the Answer to Interrogatory 3 above. Additionally, the Term Sheet was negotiated and executed with no input from the sole charitable beneficiary, Star of Hope, Inc., and includes terms that would be financially ruinous to the Star of Hope, Inc., such as the requirement that the Indiana Estate indemnify McKenzie for defense of claims brought by Morgan Art Foundation, requiring an impossible authentication of certain Indiana/McKenzie works, *and requiring an ongoing relationship with McKenzie/AIA. McKenzie/AIA has had a deleterious effect on the market for Indiana art and an association would harm the reputation and thus value of Star of Hope.*

*See*, Ex A attached hereto.

We believe that these defenses as described are a pretext. The Star of Hope just wanted to get out of any obligation to McKenzie because it does not want to deal with him. The Attorney General asserts that he cares about the well-being of the Star of Hope and thus the concerns about the "deleterious effect" that McKenzie has had on Indiana artwork and asserts that McKenzie "*also has exploited Indiana Art for commercial purposes beyond his contractual rights*." Yet the Star of Hope has entered into an exclusive production relationship with Morgan (the details of which it will not show McKenzie or discuss with him), a party that the Estate asserted in the New York action is the bad actor, defrauding Indiana out of millions while McKenzie has made over $10,000,000 for Indiana. Also, the testimony of scheduled witness Jamie Thomas, who had Indiana's power of attorney for the years preceding his death, testified in deposition that Indiana was worried and complained that Morgan had not been paying him while Indiana's business relationship with McKenzie was friendly and they collaborated on many projects and there were no complaints as to McKenzie's royalty payments. In his deposition, the Estate's personal representative James Brannan testified that he believes

4

"absolutely" that all those fraud allegations made in the Estates New York counterclaims are true.

It is fair, McKenzie contends, to question how there could be a genuine concern by the AG about the Star of Hope dealing with McKenzie so much so that it is against public policy, "deleterious," and "exploitative" of Indian's artwork while not even looking into the peccadillos of Morgan. McKenzie is the one who made more than $10,000,000 to Indiana. When asked about this at his deposition, Larry Sterrs testified that he was aware of those fraud claims as to Morgan and that he was looking into them.

As to the evidence that McKenzie wants to offer on this matter, it would only, if allowed, be the Estate's counterclaims and then questions of witnesses Sterrs, about why these claims against Morgan are of no concern to him but McKenzie is a pariah, and Thomas, briefly about the good relationship between Indiana and McKenzie, about this matter. This would not duly add to the trial time.

The relevance of all this is that we will contend at the hearing that the reason why the Estate kept sending McKenzie detailed revised final settlement agreements which really walked away from the Binding Term Sheet substance is that the Star of Hope did not want to deal with McKenzie and told the AG as much and told the Estate as much. Everything since then has been aimed at getting out of that Term Sheet. We ask rhetorically why else would the AG's office be on its truly high horse about McKenzie's supposed misbehaviors, which we can prove is not as the AG contends it to be, while ignoring a massive criminal fraud by Morgan that is claimed to have deprived Indiana of millions of dollars that would now be poised to be in the pocket of the Star of Hope were it not secreted away by Morgan and why the AG has said nothing about the new, secret

contract between Morgan and the Star of Hope that binds the Star of Hope to work exclusively with Morgan but apart from tht, the terms of their relationship are sealed, at least from McKenzie.

2. **Motion in *Limine* to Exclude Evidence About Any Alleged Forgery of Artwork or Discussions About Robert Indiana Signing Artwork (ECF 119)**

In their Interrogatory Answers, the AG alleges that McKenzie forged artwork. If that remains relevant, then we would, if allowed, offer evidence of video recordings showing that Indiana signed the artwork alleged to have been forged. Just several days ago, on July 7, 2022, the AG sent McKenzie's counsel an email stating as follows:

> Please be advised that the Attorney General is limiting the issues raised by our affirmative defenses to issues relating to the Star of Hope's lack of input into the Binding Term Sheet and that the Binding Term Sheet is not in the best interest of the Star of Hope. We will not be alleging that Mr. McKenzie appears to have forged Indiana artwork, or that he exploited Indiana art for commercial purposes, or that Mr. McKenzie has had a deleterious effect on the Indiana market and reputation. I am informing you of this more limited scope than was described in the AG interrogatory responses of February 10, 2022, so that you can plan your witnesses and exhibits accordingly. I'm wondering whether this may, for example, obviate the need for you to call Mr. Thomas.

We sought clarification and in response the AG replied (highlighting in original):

> That the AG contends that the Binding Term Sheet is against the Star of Hope's interests is certainly not new. See, e.g. answer to Rog 4:
>
> 4. State why You assert in your Affirmative Defense 4 in Your Amended Answer that the Term Sheet is unenforceable because it is contrary to public policy.
>
> **ANSWER**: . . . The factual basis is set forth in the Answer to Interrogatory 3 above. Additionally, the Term Sheet was negotiated and executed with no input from the sole charitable beneficiary, Star of Hope, Inc., and ==includes terms that would be financially ruinous to the Star of Hope, Inc., such as the requirement that the Indiana Estate indemnify McKenzie for defense of claims brought by Morgan Art Foundation, requiring an impossible authentication of certain Indiana/McKenzie works, and requiring an ongoing relationship with McKenzie/AIA==. *McKenzie/AIA has had a deleterious effect on the market for Indiana art and an association would harm the reputation and thus value of Star of Hope.*

6

> The purpose of my message was to let you know we were narrowing our defenses, not expanding.

While none of the highlighted part of the above-quoted description makes relevant the point about Morgan's fraud and why that was overlooked by the Star of Hope and its protector, the AG, the emphasized part following the highlighted part is quite broad and quite vague.

More recently, the AG has filed its Trial Brief (ECF No. 111) which is likewise quite vague, stating at page 2:

> Mr. McKenzie's post-mediation conduct and communications following execution of the 2019 Term Sheet highlighted and reinforced the Star of Hope's concerns about the impact of the 2019 Term Sheet if it were implemented, which continue to this day.

Of course, to the extent that the forgery allegations as to McKenzie will not be pursued at the trial by Defendants, we will not seek to offer the videos showing that Indiana signed and accepted the artwork. Time will tell at the trial. But the AG response to this motion *in limine* (ECF 123), states they "are not intending to press forgery-related issues" which is not the same as conceding they will not be presenting any such evidence. And their prior correspondence to counsel on this point was also vague, while mentioning some specific examples to support their defenses, the AG has not clearly limited the evidence they will offer to show their problem with requiring an ongoing relationship between McKenzie and the Star of Hope as contemplated under the Term Sheet. Additionally, the Estate maintains affirmative defenses of unclean hands and fraud.

We also note that the AG's high-minded statement of its lofty purpose to protect the Star of Hope charity also, we contend, makes relevant the issue raised by the fraud the Estate alleges against Morgan, and the way neither the Star of Hope nor the Estate seem to care about it. The

Personal Representative certainly still does. As we will show at the trial, here is what Brannan still thinks about it:

> Q. And have you since -- I mean, I realize that a settlement has been reached [with Morgan], but, just to clarify, since that filing in March of 2020 [Estate Counterclaims against Morgan] did you ever come to the conclusion that you were wrong to have made those allegations?
>
> A. No.

Deposition of James, Brannan, June 2, 2022.

If the concern for charities was indeed extant during the reign of Queen Elizabeth I, that forceful Monarch certainly would not have ignored the serious allegations about Morgan while seeking to void a contract made by a bevy of lawyers while, as we will show, the Star of Hope and a bevy of lawyers stood by without expressing any concern when they saw that agreement (according to the testimony of Larry Sterrs of the Star of Hope) before it was signed.

3. **Motion *in Limine* to Exclude Evidence of Comments Made by the Mediator in the Portland, Maine 2019 Mediation**

McKenzie agrees with the Estate that these Mediator statements made during the mediation are hearsay if offered for the truth of the matters asserted. We also admit that such statements are irrelevant if offered for the fact that they were said by him. McKenzie does not intend to offer any of the statements he made during the mediation.

Dated: July 14, 2022

Respectfully submitted,
/s/ *John J.E. Markham, II*
John J.E. Markham, II (Maine BBO No. 2674)
/s/ *Bridget A. Zerner*
Bridget A. Zerner (*Pro Hac Vice* – MA 669468)
MARKHAM & READ
One Commercial Wharf West
Boston, Massachusetts 02110
Tel: (617) 523-6329
Fax: (617)742-8604
jmarkham@markhamread.com
bzerner@markhamread.com

-and-

908 Maine Street
Waldoboro, Maine 04572
Tel: (207) 790-8049

## CERTIFICATE OF SERVICE

I, John J.E. Markham, II, do hereby certify that on July 14, 2022, I served a copy of the foregoing on all counsel of record via the CM/ECF filing system.

*/s/ Bridget Zerner*
Bridget A. Zerner